[Crim. No. 155. Second Appellate District.—December 20, 1909.]

## In re JAMES E. BOND on Habeas Corpus.

MUNICIPAL ORDINANCE PROHIBITING INTOXICATING LIQUORS—VIOLATION OF TERMS—HABEAS CORPUS.—A person lawfully convicted of a violation of the terms of a municipal ordinance prohibiting the sale, gift or distribution of intoxicating liquors cannot be discharged on *habeas corpus*.

ID.—CONSTRUCTION OF ORDINANCE—DISJUNCTIVE CLAUSES.—Where the ordinance contains two prohibitory clauses, the first of which prohibits the keeping of a place where liquors are distributed, and the second of which relates to the sale, gift or distribution thereof by any person as owner, employee, agent, servant, clerk, or otherwise, the ordinance is broad enough to include the selling or giving away of intoxicating liquors whether at a place of business or otherwise.

ID.—ONE SALE A VIOLATION OF SECOND CLAUSE.—One sale may be a violation of the second clause, and constitute a crime.

ID.—CONSTITUTIONAL GRANT OF POWER TO PASS ORDINANCE.—The power to pass a prohibitory ordinance forbidding the sale, gift or distribution of intoxicating liquors is granted by section 11 of article XI of the state constitution.

ID.—KEEPING OF BAR BY CLUB.—Where a club organized otherwise for legitimate purposes proceeded to establish a bar for the sale and distribution of intoxicating liquors among its members, by a written order deposit and check system, it discloses sufficient evidence to support a finding of an intent to evade the terms of the prohibitory ordinance of the municipality, and of a sale of liquor to the members of the club, in violation of the ordinance, by the person in charge of the bar, who was properly convicted of such violation.

ID.—USE OF SYSTEM OF DISTRIBUTION IMMATERIAL.—The use of the written order deposit and check system of distribution of liquor from the bar among the members of the club, is immaterial, and does not affect the nature of the transaction.

ID.—RIGHT TO USE OF LIQUORS AT FIRESIDE—QUESTION OF FACT.— Whether a club may fall within the right of an individual to be protected in the use of liquor at his own fireside is a question that must depend upon the facts of the particular case; but the facts here appearing authorized the court to exclude that hypothesis, and this court cannot review the decision of fact by the trial court on *habeas corpus*.

PETITION for writ of *habeas corpus* to the city marshal of the city of Upland, San Bernardino County.

The facts are stated in the opinion of the court.

John D. Pitts, for Petitioner.

Ralph E. Swing, for Respondent.

THE COURT.—Petitioner was found guilty of violating a prohibitory liquor ordinance of the city of Upland and sentenced to pay a fine of fifty dollars, with the alternative of imprisonment of one day for each dollar of fine. On application of his attorney to this court a writ was issued against thé city marshal of Upland, in whose custody petitioner was detained, and the matter is before us for hearing upon the sufficiency of the petition.

The complaint and a stipulated statement of the evidence upon which the conviction was had are made part of the petition. The complaint charges that the defendant did . . . willfully and unlawfully sell, furnish, distribute, deliver and give away, and for a long time prior thereto had been willfully and unlawfully selling, furnishing, distributing and giving away, spirituous and malt intoxicating liquors, to wit, whisky and beer. The portion of the ordinance necessary to be considered here reads: "Section 1. Any person, firm, corporation, club, or association that within the city of Upland, California, establishes, keeps, opens, maintains or carries on a place where spirituous, vinous or malt, or mixed liquors, or any alcoholic or any intoxicating drink or drinks, or so-called temperance beer, containing alcohol in any quantity whatever, are sold, kept for sale, offered for sale, furnished, distributed, divided, delivered, drunk or given away; or, that within said city, either as owner, employee, agent, servant, clerk, or otherwise, sells, keeps for sale, offers for sale, furnishes, distributes, divides, delivers, or gives away, any spirituous, vinous, malt or mixed liquors, or any alcoholic or intoxicating drink or drinks, or so-called temperance beer containing alcohol in any quantity whatever, except as herein provided, shall be deemed guilty of a misdemeanor." The exception relates to sales for medical and mechanical purposes.

The petition shows that the defendant is a member of a secret society organized in Upland and incorporated in this state under the name of the "Protective Brotherhood of the Alamo"; the purposes of the order, as set forth in the articles

of incorporation, are: "To promote charities, moral and social ethics, fraternalism, righteous citizenship, the brotherhood of its members and benevolence to all mankind. To encourage useful and profitable industries, to provide amusements, athletic sports, libraries, reading-rooms, cafes, social halls and club-rooms for its members. To provide for sick and disabled members and the families of deceased members. To organize, charter, equip and institute subordinate lodges of the Protective Brotherhood of the Alamo, in this and other states. To *purchase, store and distribute goods, wares and supplies* for its members and the subordinate lodges of the Order."

The organization leased and occupied a building formerly used as a hotel, and therein, in addition to lodge-rooms, clubrooms, including parlors, reception-rooms, library and reading-rooms, banquet hall, dining-room, sleeping apartments and committee-rooms, maintained a bar from which members of the organization only were furnished with spirituous, vinous and malt liquors, for which there had been procured a United States retail liquor license. The method of disbursing the liquors, which was ordinarily attended to by a steward, was as follows: Any member who wished to become a patron of the bar deposited (presumably with the steward) such sum as he desired to invest in a ticket or tickets, bearing upon the face the figure 5 or a series of 5's, representing at five cents per figure the amount paid or deposited. Upon ordering liquors or other supplies, if any such were included, the number of 5's on the ticket which represented the value of the purchase, the figures being taken at a valuation of five cents each, were punched by the person delivering the goods. Thus, for a glass of beer, valued at five cents, one figure would be punched, and for a drink of whisky, valued at ten cents, two figures would be punched. No money passed directly at the time the liquor or supplies were received by the patron, but an order blank directing the board of directors to purchase for the member who bought the ticket certain specified supplies, liquors, lodgings, meals, cigars, etc., specified thereon, was signed and delivered at the time of the "deposit" for the ticket. To show that the organization was a *bona fide* fraternal and secret society, a showing is made of the value of the furniture and fixtures, lodge-room accessories

12 Cal App.—17

and supplies on hand, making an aggregate of $4,500. The vinous and malt liquors totaled only $16.50, each of the other supplies named having a greater value; even mineral waters reaching an aggregate of $37.50.

Amid these surroundings the defendant, in the absence of the steward, furnished and delivered to various members of said corporation holding the above-mentioned tickets, both beer and whisky, punching and canceling their respective tickets in the manner above described. The beer and whisky so furnished and delivered by defendant was taken and furnished from the common stock kept on hand by said corporation for the purpose of serving to members, on demand, holding tickets regularly issued, and was not the individual, separate property of the persons to whom defendant served the same.

We are satisfied that the ordinance is broad enough in its terms to include the selling or giving away of intoxicating liquors, whether at a place of business or not. The two clauses of section 1 of the ordinance are stated in the disjunctive, the first relating to the keeping of a place and the second to a sale, gift or distribution by any person, either "as owner, employee, agent, servant, clerk, or otherwise." That one sale may be a violation of the second clause is supported by the leading opinion in *Ex parte Fedderwitz* (Cal.), 62 Pac. 935, 940. The ordinance before the court in that case, like the one here, was a prohibitory as distinguished from a license ordinance. Like this, also, it contained one clause applying to the keeping of a place of business, and another relating to the selling, offering for sale, and giving away of intoxicating liquors. Reviewing the opinion in *Merced Co. v. Helm*, 102 Cal. 159, [36 Pac. 399], in which it was said that a single sale did not constitute a violation of the ordinance there under consideration, Beatty, C. J., in the Fedderwitz opinion, says: "But that case has no bearing on the proposition. That was a civil action to recover a license which was imposed, and could only be imposed, for the privilege of conducting the business." A single sale was there held not to be carrying on the business in the sense of a license law. "It does not follow from this, however, that a single sale may not constitute a crime, if the ordinance so provides, as this clearly does." It was also held in that case that the power to pass.

an ordinance such as the one before us is unquestionably conferred by section 11 of article XI of the constitution of the state. Speaking with reference to earlier cases distinguished, it is said: "It was not decided or intimated that a prohibition of single sales was beyond the power of the municipality. In this case—for the first time, apparently—that question is directly involved, and we can only say that no law has been called to our attention with which the Berkeley ordinance conflicts." The dissenting opinions in that case discuss other matter considered in the leading opinion and do not affect the question before us, but McFarland, J., in his concurring opinion, limits his support of the decision in this respect by the declaration that the language of the complaint charged a sale, whereas the ordinance also included a "giving away." As to the latter he says: "So that by the terms of this ordinance it would be a public offense punishable by imprisonment for any person in Berkeley, in his own home, and at his own table or fireside, to offer a glass of wine or beer to a guest; and I desire to say that when a petitioner convicted of this time-honored hospitality shall come here for relief I will not feel myself precluded from again inquiring whether or not a personal right guaranteed by the constitution has been violated."

Relying upon the principle announced in the reservation made by Justice McFarland, and claiming the right to extend that reservation to the hospitality of the social club by virtue of what is said in the case of *Cuzner* v. *California Club,* 155 Cal. 303, [100 Pac. 868], the petitioner contends that the *bona fide* social character of the club of which defendant was a member had been established. The Cuzner-California Club case is readily distinguished from the case before us, in that it was a license case pure and simple, while we have no question of when a traffic in liquors may be carried on without a license. The question is, Did the defendant traffic in, sell or give away liquors in violation of an ordinance prohibiting each and all of these things? The matter before the supreme court in the California Club case was not: "Has a municipality the right to prohibit by ordinance the distribution of liquors in the manner shown in the record in that case?" but, Was the club violating a license ordinance by such a distribution without procuring a license? We fully

approve and concur in the views of Justice McFarland as to the invasion of the hospitality of the fireside, and in a proper case it might be that we should recognize that the club was the fireside of its members, or some of them. The question, however, of whether or not a club is the *bona fide* fireside of one claiming this protection from prosecution for the violation of a prohibitory liquor ordinance must depend upon the facts in each particular case.

Considering this question as it affects the "Protective Brotherhood of the Alamo," we find the following conditions: On July 2, 1906, the city of Upland passed a prohibitive liquor ordinance which made it unlawful for any person or persons to keep any and every form of place in which traffic in intoxicating drinks as a beverage is ordinarily carried on, including "blind pigs" and "boot legs." On July 30, 1908, the section as hereinabove quoted was introduced as an amendment to the ordinance, the terms "club, corporation and association" not appearing in the original. This amendment appears to have slept for a year, but was finally passed and adopted on the third day of August, 1909. In the meantime the decision in the California Club case was filed on March 6, 1909, and on April 12, 1909, the "Protective Brotherhood of the Alamo" was incorporated. Accepting the moral. athletic, healthful, benevolent and philanthropic purposes of the order as being declared in good faith, we cannot overlook those other purposes appearing in the articles if incorporation which are not so closely allied with the foregoing, and more nearly connected with and more easily made applicable to the transactions in which the defendant was engaged. That a fraternal brotherhood equipped as this one was should be organized in the prohibition community of Upland at such a time, with the declared purposes: "To purchase, store and distribute goods, wares, and supplies for its members and the subordinate lodges of the order," and should upon its organization proceed at once to establish a bar, and provide the "machinery" which this one did to extract the "goods, wares and supplies" from the bar, gives strong support to the implied finding in the judgment of conviction of the defendant that these purposes of the order were intended to cover an evasion of the prohibition laws of the community in which it resided. Like many efforts of litigants to establish "too

good a case," the evidence here seems to prove too much. Simplicity and directness are the best evidences of good faith, and when complexity and intricate machinery are introduced to accomplish that which from its very nature does not require it, we usually and naturally assume that such use was intended to cover up something. If the case were before us on appeal, we should say at once that there was abundant evidence to support a finding of an intent to evade. The use of the written order and deposit and ticket in the manner shown by the evidence does not change the transaction. The commuter who purchases his ticket for ten or twenty or thirty rides cannot be said to buy a share in the car or railroad; neither can it be said that when the conductor punches his ticket to cover his transportation he does not by this act pay his fare. The defendant was acting for the club in serving, from the common stock held by it, liquors to the members of the club and punching their tickets therefor. The liquor he served did not belong to him, and he was not dispensing the hospitality of himself or of the club. No attempt was made to show in any manner that the hospitality in question was his. It was a sale by the club to such of its members as obtained the liquor from the defendant. The sale was in violation of the ordinance.

Writ discharged and petitioner remanded to the custody of the marshal of the city of Upland, with direction that he be imprisoned in the county jail of San Bernardino county, in accordance with the commitment returned with the writ issued by the court, in default of payment of the fine therein provided.