BARNS, PAUL D., Justice
(Retired):
This is an original action in mandamus against the Florida Revenue Commission, the Comptroller, and others, to force a refund of sales taxes paid the State by the relator. We find for the respondents and deny the writ.
FACTS
The facts of the case are not in dispute, which, as stated in the relator’s brief are as follows:
On February 12, 1962, relator sold to Tall Texan, Inc., a corporation of Cocoa Beach, Florida, under a conditional sales contract, certain bowling equipment for a total consideration of $124,586.16, of which $118,586.16 was to be paid to relator over a period of time as provided in the contract. Coincident with this sale, relator, as a dealer, pursuant to the requirements of Chapter 212, Part I, F.S.A., paid into the state treasury the amount of $2,916.00 representing the full sales or use tax due, based upon a total taxable sales price of $97,200.00 for such property, and which such amount was included in the deferred balance due i and owing relator by the purchaser. Between February, 1962, and May, 1965, Tall Texan, Inc. paid relator a total of $39,361.88 upon the deferred balance due relator under the contract, of which $908.30 represented repayment to relator of part of the sales tax advanced and paid by it on the transaction. In May, 1965, Tall Texan, Inc. defaulted on its contract and on May 18, 1965, returned the property to relator. At the time the property was so returned to relator, there was an unpaid balance of $68,931.10 remaining..dw .and owing relator under the contract, of which $1,947.72 represented the unpaid balance of the sales and use tax which relator had advanced and paid to the State.
Following its repossession of the property in May, 1965, and on or about December 1, 1965, relator filed its application dated December 1, 1965, with the respondents for a refund to it in the amount of $2,007.96, being the unpaid balance due relator for the sales or use tax paid, but which claim correctly should have been in the amount of $1,947.72. This claim for refund was made a part of an application for refunds totaling $69,098.82, including this and other similar transactions of relator.
After consideration of relator’s claim for refund, the respondent Florida Revenue Commission disallowed and rejected the application for refund and refused to approve a refund to relator, upon the ground that it "was not properly claimed within the statutory period for refund”. Such disal-lowance was made by letter, dated October 28, 1966, addressed to relator’s attorney, likewise disallowing other similar claims for refund made by relator.
During the period extending from October, 1957, through October, 1963, relator, sold tangible personal property to many other customers in the State of Florida under contracts similar to the one here involved, and advanced and paid the full sales or use tax due thereon into the state treasury.. The purchasers under several of such contracts likewise defaulted and returned the property to relator, prior to re *6 paying to relator the entire amount of such tax advanced and paid by relator, and thereupon relator filed with respondents its claims for refund for the unpaid balance due relator for the tax so paid upon the defaulted transactions. Upon consideration of all of relator’s claims for such refunds, the respondents approved and allowed all of such claims filed within thirty-six months after the date upon which-the tax was paid, and rejected and disallowed all other such claims for refund as not being claimed-within the statutory period for refund. Respondents refunded to relator the unpaid balance of the tax paid on those transactions for which relator’s claims for refund had been allowed.
It is relator’s position herein that its claim for refund was properly and timely filed with the respondents and should have been approved and allowed and the requested refund paid to relator; that the respondent Florida Revenue Commission should now be directed to approve and allow relator’s claim for refund in the amount of $1,-947.72, and to pay relator such amount out of the state treasury.
The parties have stipulated and agreed that the decision of the court respecting the particular claim for refund which is the subject of this proceeding shall govern all other similar claims made by relator and disallowed by the respondents.
It appears that before the Attorney General, upon the request of Director of the Florida Revenue Commission for an advisory opinion, advised to the contrary, it was the practice to return to the vendor sales taxes previously paid and remitted by him on sales evidenced by retain title or conditional sales contracts, to the extent of the default, when the vendee defaulted and the vendor repossessed the personal property sold. This conclusion is reached from the statement of the facts, supra, and regulations quoted in petitioner’s brief which quoted regulations have since been amended to provide to the contrary.
The Attorney General’s advisory opinion 066.SS (dated May 31, 1966) to the Florida Revenue Commission was as follows:
"Re: Sales Tax Refunds or Credits— When Payable or Allowable
“Gentlemen:
“1. Where a dealer sells merchandise on open account and later writes off the sale in whole or in part as a bad debt; or
Sells merchandise under a retain title or similar contract, and subsequently repossesses the property;
Is such a dealer entitled to a refund of all or any of the taxes so paid?
« * * *
“It is provided in and by the caption paragraph of Sec. 212.05, F.S., that it is ‘the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, or who rents or furnishes’ such tangible personal property for a consideration, such sales or rentals to be taxable at the rate of three per cent of the sales or cost price of the said tangible personal property, or the rental or lease price thereof. The ‘sale’, as used in said Ch. 212, F.S., is defined in subsection (2) of Sec. 212.02, F.S., as meaning:
“‘(a) Any transfer of title or possession, or both, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever of tangible personal property for a consideration * * *. A transaction whereby the possession of property is transferred but the seller retains title as security for the payment of the price, shall be deemed a sale. * * * ’
“In subsection (4) of said Sec. 212.02, F.S., ‘sales’ price is defined as meaning *7 ‘the amount for which tangible personal property, including any of the services that are a part of the sale, valued in money, whether paid in money or otherwise, and includes any amount for which credit is given to the purchaser by the seller. * * * ’
“It is provided in subsection (1) of Sec. 212.06, F.S., that, ‘The aforesaid tax at the rate of three per cent of the retail sales price as of the amount of sale, or three per cent of the cost price, as of the amount of purchase * * * shall be collectible from all dealers as herein defined on the sale at retail * * *. The. full amount of the tax on credit sales, installment sales or sales made on any kind of deferred payment plan shall be due at the moment of the transaction in the same manner as a cash sale. * * ’ The last above sentence was added by Sec. 1, Ch. 61-275, Acts of 1961, and may have been intended to bring an end to practices followed by some prior to the the enactment of the 1961 Act. Subsec. tion (1) of Sec. 212.17, F.S., insofar as here material, provides that:
“ ‘In the event purchases are returned to the dealer by the purchaser or consumer after the tax imposed by part I of this chapter has been collected, or charged to the account of the consumer or used, the dealer shall be entitled to reimbursement of the amount of tax collected or charged by him, in the manner prescribed by the comptroller; and in case the tax has not been remitted by the dealer to the comptroller, the dealer may deduct the same in submitting his return upon receipt of a signed statement of the dealer as to the gross amount of such refunds during the period covered by said signed statement, which period shall not be longer than ninety days.’
? last above quoted provision from subsection (1) of Sec. 212.17, F.S. which has remained unchanged since its original enactment as Sec. 17, Ch. 26, 319, Acts of 1949, must be read in the light of, and construed with, the last sentence of subsection (1) of Sec. 212.06, F.S., above-mentioned, providing that ‘the full amount of the tax on credit sales, installment sales or sales made on any kind of deferred payment plan shall be due at the moment of the transaction in the same manner as a cash sale,’ which was added to said subsection by Sec. 1, Ch. 6F-275, Acts of 1961, and is the controlling statute in case there be a conflict between it and the above quoted portion of subsection (1) of Sec. 212.17, F.S.
“ * * *
“When we take into consideration the definitions of sale, retail sale, etc., contained in Sec. 212.02, the provision in subsection (1) of Sec. 212.06, that ‘the full amount of the tax on credit sales, installment sales and sales of any kind of deferred payment plan shall be due at the moment of the transaction in the same manner as a cash sale,’ and other provisions in Ch. 212, F.S., we reach the conclusion that goods sold on open account, as well as sales on retain title or similar contracts or agreements, whether written off as constituting bad debts, or repossessed or otherwise taken under conditional sale, retain title, or other like or similar agreements, are nevertheless sales under said Ch. 212, F.S., and sales taxes in the full amount or consideration for said sales or transactions become immediately due and payable.
“The above-mentioned provision copied from subsection (1) of Sec. 212.17, F.S., when read and construed with Ch. 212, F.S., generally seems to relate to goods and merchandise returned by the purchaser or customer to the dealer where the transaction has not been closed, or where the goods and merchandise are returned because of defects or deficiencies therein, and has no application after the sales, rental, or other trans *8 actions has been closed, or to contracts where the goods or merchandise have been retaken by the seller or those claiming under him for default or nonpayment, or where the goods or merchandise have been retaken through legal process, and such a transaction does not appear to be within the purview of subsection (1) of Sec. 212.17, F.S.
“The provision in subsection (1) of Sec. 212.06, F.S., that ‘the full amount of the tax on credit sales, installment sales and sales made on any kind of deferred payment shall be due at the moment of the transaction in the same manner as a cash sale/ doubtless was added by Sec. 1, Ch. 61-275, to correct a practice of collecting the taxes on retail installment sales or conditional sales and paying the same over to the Comptroller as and when the installment payments were made on such contracts, by which practice future installments not having been made after a default or a retaking of the property by the dealer or his grantee were never paid to the state, which we have been informed was the practice in instances. Under the said 1961 amendment taxes are due upon the making of the said contracts or agreements.
“In the light of the above and foregoing, the two above stated questions are answered as follows:
“The first qestion is answered in the negative, the said taxes having accrued and become payable upon the making of the transactions mentioned.”
We adopt the foregoing construction and application of the relevant and controlling statutes and deny petitioner relief on the merits.
Writ denied.
CALDWELL, C. J., and THORNAL and ERVIN, JJ., concur
DREW, J., dissents.