358 So.2d 76 (1978)
ESTATE OF W.T. GRANT COMPANY (Bankrupt), Petitioner,
v.
Gerald A. LEWIS, Comptroller of the State of Florida, Reubin O'd Askew, Governor, Robert L. Shevin, Attorney General, Gerald A. Lewis, Comptroller, Doyle Conner, Commissioner of Agriculture, William Gunter, Treasurer, Ralph D. Turlington, Commissioner of Education, and Bruce A. Smathers, Secretary of State, As and Constituting the Governor and Cabinet As Heads of the Department of Revenue and the Department of Revenue, State of Florida, Respondents.
No. GG-471.
District Court of Appeal of Florida, First District.
April 21, 1978.
Rehearing Denied May 23, 1978.
*77 Robert M. Ervin, Joseph C. Jacobs, James R. McCachren, Jr. and Robert J. Angerer, of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for petitioner.
Robert L. Shevin, Atty. Gen., and Harold F.X. Purnell, Asst. Atty. Gen., for respondents.
MASON, ERNEST E. (Circuit Judge, Retire), Associate Judge.
On July 28, 1977, petitioner, Estate of W.T. Grant Company (Grant) filed this petition for review seeking review of the decisions of the respondents, State Comptroller and The Department of Revenue (the Department), denying Grant's request for a sales tax refund.
Prior to its adjudication as a bankrupt on April 13, 1976, by the United States District Court for the Southern District of Florida, Grant operated numerous retail stores in the State of Florida. Grant's sales consisted of cash sales and sales made pursuant to several different types of credit plans. Grant paid Florida sales taxes on both cash and credit sales at the time the sales were made.
Grant on March 29, 1977, requested the refund of $520,060.00 in sales taxes pursuant to the provisions of F.S. 215.26. The reason given in the refund application was that an "over payment of Florida's sales tax in the amount of $520,060.00" had been made. The refund application admitted that Grant had made numerous "sales" pursuant to several different types of credit plans, with the sales tax collected on the credit sales "at the time the sale was made." The applicant went on to note that many of the accounts receivable resulting from the credit sales were later found to be uncollectible and were written off the company's books, and because of its adjudication as bankrupt, it was no longer possible to offset bad debts against future retail sales.
*78 By letter dated April 15, 1977, the Office of the Comptroller notified the Petitioner that the Florida Department of Revenue had audited its claim for refund and had recommended that payment of the refund be denied because the petitioner did not claim credit for the tax paid on its bad debts in the manner required by Section 212.17(3), Florida Statutes (1975).
On May 3, 1977, petitioner, through its trustee in bankruptcy, filed a request for a rehearing and re-examination of the denial of its claim for a refund of overpayment of Florida sales tax in the amount of $520,060.00. Petitioner made its claim pursuant to Section 215.26, Florida Statutes (1975). It also claimed that Section 212.17(3), Florida Statutes (1975), should entitle it to a refund in the amount requested.
By letter dated June 3, 1977, the Department of Revenue, on behalf of the Comptroller of the State of Florida, denied petitioner's request for a rehearing and re-examination. Those agencies had concluded that neither Section 215.26 nor Section 212.17(3) authorized a refund of sales tax paid on the unpaid balance of the accounts which had been found to be worthless and had been written off as bad debts. By letter dated July 1, 1977, petitioner received official notification, in accordance with Chapter 17, Florida Statutes, from the Office of the Comptroller that its request for rehearing and re-examination had been denied.
On July 28, 1977, petitioner filed its petition for review in this Court for review of the respondent Agencies' final agency action denying petitioner's request for a refund under Section 215.26 or 212.17(3), Florida Statutes (1975), or both of these statutes.
We have jurisdiction to review the final action of respondents denying the refund of the taxes in question under authority of Article V, Section 4(b), of the Florida Constitution (1968 Revision as amended in 1973) and Section 120.68, Florida Statutes, as amended in 1976 and 1977. Respondents' contention that jurisdiction lies solely in the Circuit Court is not well taken for the reason that this proceeding does not involve the legality of a tax assessment or toll, as claimed by respondents, but rather involves solely the question of petitioner's right to a refund of sales taxes lawfully assessed in the first instance but for which petitioner contends it became entitled to a refund due to a condition arising subsequent to the assessment. This being true the recent decision of the Supreme Court of Department of Revenue v. Amrep Corporation, 358 So.2d 1343 (Fla. 1978), cited by respondents to this court on March 16, 1978, does not support respondents' position that we lack jurisdiction.
We now direct our attention to the merits of the case. Our decision turns upon the proper interpretation of certain sections of Chapter 215 F.S. and Chapter 212 F.S. Petitioner predicates its claim for a refund of the taxes in question upon the provisions of Section 212.17 and Section 215.26.
Section 212.17 which deals with credits for returned goods provides that such credits may be had in one of three situations: First, in the event purchases are returned to the dealer by the purchaser or consumer after the sales tax imposed has been collected by the seller or charged by him to the account of such purchaser or consumer, the dealer (seller) shall be entitled to reimbursement of the tax collected or charged, in the manner prescribed by the Department of Revenue. And in case the tax has not been remitted by the dealer to the department, the dealer may deduct the same in subsequently submitting his return, upon receipt by the department of a signed statement of the dealer as to the gross amount of such returned goods during the period covered by such signed statement which period shall not be longer than 90 days. In the event the dealer has already remitted the tax paid to him upon such later returned goods, the department shall issue to the dealer a credit memorandum equal to the net amount so remitted to be applied against subsequently accrued taxes. Further provision is made for the refund of taxes to a dealer who has retired from business and who has filed a final return, if *79 it is established that the taxes were not due. (Emphasis supplied). Section 212.17(1) F.S.
Clearly petitioner's claim for a refund of taxes already paid by it does not fall within these provisions for they deal solely with returned goods which may be subsequently re-sold, and another sales tax collected or charged upon such re-sold goods. Nor can petitioner's claim be predicated upon its status as a dealer who has retired from business and who is entitled to a refund of taxes remitted upon the theory that the tax was not due. The taxes paid by petitioner and for which it now claims a refund for taxes paid on bad debts subsequently charged off became due when the sales were made and the purchasers at that time became obligated to pay the same (Section 212.06(1)(a)).
The second situation under which a dealer is entitled to a credit under the provisions of Section 212.17 is that where tangible personal property is sold under a retained title or conditional sale contract, and is later repossessed by the dealer. Subsection (2) of Section 212.17 provides that a dealer who has remitted the tax imposed may take credit in future tax returns for the tax paid by him on the unpaid balance of the purchase price when he repossesses the property, in the same manner as he may do so under subsection (1). And when such repossessed property is resold the sale is subject in all respects to the tax imposed by Chapter 212 F.S. Here again the petitioner's claim does not fall within the provisions of this subsection (2) so as to entitle it to a refund, for the sales with which we are concerned here were not retained title or conditional sales, but were sales made pursuant to several different types of credit plans. Here title passed to the purchaser upon delivery of the goods.
Petitioner places great reliance upon the provisions of subsection (3) of Section 212.17 to support its claim for a refund of taxes paid upon goods sold on credit which transaction later turned out to be "bad debts". This subsection provides that a dealer who has paid the tax imposed on the sale of tangible personal property may take credit in any return filed under the provisions of Chapter 212 for the tax paid by him on the unpaid balance due on accounts which during the period covered by the current return have been found to be worthless and are charged off for federal income tax purposes. The subsection provides, however, that if any charged off accounts are thereafter paid to the dealer, the dealer must report such amounts so subsequently received and pay the tax thereon in his first return filed after such payments are received by him.
Here again, the statute is dealing with credits against future taxes collected by the dealer or charged to the purchaser on future sales, not with refunds of taxes remitted to the department. Since petitioner went into bankruptcy and therefore is making no future sales or tax returns, there is nothing against which any credit may be had for "bad debts" charged off.
The only instance wherein a refund (as against a credit) may be made under this statute is that provided in subsection (1) of Section 212.17 wherein it is established and determined by the department that no tax was due to be paid in the first instance. Here it is conceded that the tax was collectible at the time of the sales, but asserted that a refund ought to be made because the charge accounts became sour and uncollectible, and therefore without consideration.
Petitioner's argument that because in many instances the purchase price was never paid there was no consummation of the sale "and, in retrospect no tax was due when paid by Grant", is contrary to the express provisions of the statute. Section 212.02(4) defines the term "sales price" upon which the tax is to be paid as:
"... the total amount paid for tangible personal property, including . . any amount for which credit is given to the purchaser by the seller, without any deduction therefrom on the account of the cost of the property sold, the cost of materials used, labor or service costs, interest charged, losses or any other expenses whatsoever." (Emphasis supplied)
*80 And Section 212.06(1)(a) as applied to credit sales states:
"The full amount of the tax on credit sales, installment sales, and sales made on any kind of deferred payment plan shall be due at the moment of the transaction in the same manner as a cash sale."
We hold that the provisions of Section 212.17(3) authorize only the extension of a credit or set-off against future tax liability and do not authorize a refund of sales taxes collected on personal property sold on credit under the facts of this case.
Petitioner bases its claim for the requested refund also upon the provisions of Section 215.26 F.S. We hold that petitioner's reliance upon this section of the tax laws of this state is not well taken. This section authorizes the State Comptroller to refund to any person entitled to receive it of any money paid into the State Treasury which constitute either:
(a) an overpayment of any tax, license or account due;
(b) a payment where no tax, license or account is due; or
(c) any payment made into the State Treasury in error.
Petitioner's request for a refund does not fall within either one of these categories and therefore the Comptroller was justified in his refusal to make such refund. See State ex rel. Brunswick Corporation v. Kirk, 204 So.2d 4 (Fla. 1967); State ex rel. Victor Chemical Works v. Gay, 74 So.2d 560 (Fla. 1954).
Thirdly, the petitioner argues that to deny it the refund sought is to deny it due process and equal protection of the law. We reject this argument as not well founded. In the first place the Florida sales tax, being an excise tax is not subject to the constitutional requirements of equality and uniformity. Rather, the constitutional test to be applied to such a tax is whether the classifications created by such tax are reasonable and not arbitrary. Goulden v. Kirk, 47 So.2d 567 (Fla. 1950) and Allied Stores of Ohio v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).
The classifications created by Section 212.17 are reasonable and not arbitrary. The allowance of a credit only as against future tax liability where the dealer has not reacquired title to and possession of the tangible personal property sold, and not a refund of taxes already paid, rests upon a rational and reasonable distinction. Repossessed property can be resold by the dealer and thereby generate further sales tax collection. Such is not true of tangible personal property that remains in the possession of the purchaser leaving the dealer with only a bad debt writeoff. The same distinction is true of returned personal property to the dealer by the purchaser where the sale was not made under a retained title contract, for here again the returned property can be resold and generate further sales tax collections.
Finally, we find the argument of petitioner to the effect that to deny it a refund of the taxes in question is unconstitutional as being in violation of the Supremacy Clause of the Federal Constitution, in that such a construction of the effect of Section 212.17(3) F.S. allegedly interferes with the Federal Bankruptcy Act, to be without merit. The taxes sought to be recovered are not assets of the bankrupt estate. As we have herein stated, Section 212.17 deals with credits against future tax liability, not refunds of taxes already imposed and collected.
We affirm and dismiss the petition for review.
McCORD, C.J., and BOYER, J., concur.