LETTS, Chief Justice,
dissenting:
I dissent.
It is obvious that the amendment to Section 212.17(3) of the Florida Statutes (1979) was enacted in response to the case of Estate of W. T. Grant Company v. Lewis, 358 So.2d 76 (Fla. 1st DCA 1978) which case is ignored in the majority opinion. In support of this contention I point to the most significant language added to that amendment which was the phrase “or obtain a refund.”
I also do not agree that Section 212.17(3) is the exclusive remedy and that Section 215.26 is not applicable. In support of this view I began to expand on my dissents, but in so doing concluded that I cannot express my point of view as well as appellant’s counsel has done in his supplemental brief filed in this cause. Accordingly, I have commandeered his language in part and do hereby incorporate it in my dissent as follows:
WHAT RULE OR RULES OF CONSTRUCTION ARE APPROPRIATE TO BE APPLIED, IF ANY, IN CONSTRUING FLORIDA STATUTE § 215.26.
ARGUMENT
IF ANY RULE OF CONSTRUCTION IS NECESSARY IN THIS CASE, THAT RULE MUST REQUIRE A LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER.
I. Introduction.
The statute under consideration by this Court, Florida Statute § 215.26, provides for a refund for taxpayers when there has been an overpayment, a payment where no tax is due, or any payment made in error. The precise issue before this Court is the interaction between this statute and Florida Statute 212.17(3) dealing with bad debt credits. The sales tax statute nowhere states that § 215.26 cannot be applied in an appropriate situation, and does not by its terms state that a credit, otherwise strictly authorized by § 212.17(3), is forever lost if not claimed in the month that a bad debt is written off. Compare Fla.Stat. § 192.062 (now Fla.Stat. § 196.011) with Fla.Stat. § 192.16 (now Fla.Stat. § 196.131); Jasper v. St. Petersberg Episcopal Community, Inc., 222 So.2d 479 (Fla. 2d DCA 1969). (Legislature is capable of and has in certain statutes stated that the failure to comply with a credit or exemption filing requirement waives that right for all time). See also Exxon Corp. v. Lewis, 371 So.2d 129 (Fla. 1st DCA 1978).
*514 Notwithstanding the complete absence of any language drafted by the Legislature into Fla.Stat. § 212.17(3) which states that the credit remedy is exclusive or that the refund remedy is not available, the COMPTROLLER suggests that some constructive gloss should be added to the statute which would compel the “mutually exclusive” interpretation that it has advanced in this case.
II. Preliminary Test: Is the Statute Ambiguous?
As in the case of contracts, a statute is not subjected to the various rules of construction unless and until it is determined that there is some lack of clarity or some ambiguity in the statute or in its application to a particular set of facts. Although the appropriate rule of construction in this case is favorable to the taxpayer (see Part III, infra) the Court need not and should not proceed to construction of § 215.26 unless this initial question is first answered in the affirmative.
As CAUSEWAY has suggested to this Court from the outset, the refund statute is by its terms clear and unambiguous. That clarity is perhaps nowhere better demonstrated than in subpart (c) of the statute which calls for a refund when “any payment (is) made into the State Treasury in error.” There are no limiting terms to that refund provisions and no provision elsewhere in the Florida Statutes that precludes the Court giving those words their logical and all encompassing effect.
One recent case has examined the clarity of Fla.Stat. § 215.26 and has found it, under different circumstances, to be unambiguous and unmodified by other statutes.
In Exxon Corp., supra, the First District was called upon to determine whether the general refund statute, § 215.26, could be used in the face of a more specific statute containing a shorter claim period. The specific controversy focused on Fla.Stat. § 211.06(2), which on its face required that applications for severance tax refunds had to be filed with the Department of Revenue within one year from the date of the payment of such taxes. Exxon, the taxpayer, had requested a refund, but had not filed its application within the one year period presumably required by § 211.06(2). Exxon argued that the three year period of time allowed by § 215.26 (the statute at issue in our case) was available to it and enabled it to file a refund within three years of the date when the tax was paid. Faced with an argument analogous to the COMPTROLLER’S argument in our case (that the shorter filing requirement in § 212.17(3) implicitly excludes the longer filing time allowed under the refund statute) the First District rejected the State’s argument and stated:
We hold that § 215.26 controls and allows three years after accrual of the right to a refund within which the taxpayer can file application with the Comptroller for the refund ....
No language in § 211.06 puts the taxpayer on notice that, as claimed by DOR, severance tax refunds can only be claimed within the one year following payment, and we reject that strained construction in favor of the clear language of § 215.26 allowing a three year period for tax refunds. 371 So.2d at 130.
Thus, consistent with the widely recognized rule in Florida that you do not employ rules of construction unless there is an ambiguity or uncertainty, it is respectfully suggested to this Court that the statutes in question are clear, unambiguous, not mutually exclusive, and operate independently of the other. See Estate of W. T. Grant v. Lewis, 358 So.2d 76 (Fla. 1st DCA 1978). Accordingly, the refund statute is available to CAUSEWAY for tax years 1975 and 1976, and the refund recommended by the hearing officer in his Recommended Order should be reinstated by this Court.
III. Proper Construction of Florida Statute § 215.26 — Liberal Construction in Favor of the Taxpayer.
Should this Court for any reason in its deliberations feel that it is necessary to apply some constructive gloss to Fla.Stat. § 215.26, then it is clear from the law in *515 Florida, as well as elsewhere, that the refund statute is to be liberally construed in favor of the taxpayer claiming the refund remedy.
A. Florida law construing § 215.26.
As set forth in CAUSEWAY’S initial brief at page 19, and in CAUSEWAY’S reply brief at page 3, and contrary to the suggestion of the COMPTROLLER, the Supreme Court of Florida has specifically addressed the rule of construction that is to be applied, when necessary and appropriate, to the refund statute, § 215.26. In the case of Walgreen Drug Stores Co. v. Lee, 158 Fla. 260, 28 So.2d 535 (1946), the Court had an opportunity to discuss both the purpose behind the refund statute and the appropriate rule of construction. In discussing the reason for the existence of the refund statute, the Court stated 28 So.2d at page 536:
A reading of the quoted acts [particularly § 215.26] in full declares a policy to make complete restitution to any citizen who (1) overpays any tax, license, or account, or (2) pays when no tax or license is due, and (3) pays any tax or account into the State Treasury in error.
The Supreme Court was able to reach this logical construction from a simple reading of the text to the statute. Notwithstanding that, however, the Court also noted that its decision in the Walgreen case was supported by the rule of construction it applied to § 215.26, which was:
If the text of the act does not reveal with certainty the intent of the Legislature, and it is susceptible of two meanings, that meaning most favorable to the taxpayer should be adopted. Id.
The Walgreen case is a clear, express, and direct statement by the Supreme Court of Florida, that the refund statute is to be construed, when necessary, in favor of the taxpayer. This case has never been modified or receded from in any way and, as will be set forth below, is fully consistent with other policy considerations in the State of Florida and with the bulk of the reported decisions in the United States.
The Exxon case discussed in detail above also speaks tangentially to the appropriate rule of construction to be utilized in evaluating the application of § 215.26. The First District in Exxon stated that, unless there is clear and explicit language to the contrary in some other statute preventing the employment of the general refund statute, the clear language of § 215.26 is to be employed in giving a refund.
Finally, the Attorney General of the State of Florida has addressed the question of § 215.26 and has specifically considered its application to the precise statute at issue in this case, § 212.17(3). While Attorney General opinions are not legally binding on courts in the State of Florida, this Court has recognized that such opinions are persuasive and are entitled to be given weight in considering Florida statutes. See Richey v. Town of Indian River Shores, 337 So.2d 410 (Fla. 4th DCA 1976).
The particular Attorney General’s Opinion is 069-65, rendered on August 8, 1969, following the creation of the bad debt credit in § 212.17(3). The specific question addressed by the Attorney General was “Are tax credits or refunds authorized under § 212.17(2) and (3), F.S. controlled by § 215.26(2), F.S.?” In a brief but dispositive opinion, the Attorney General adopted the same rule of construction employed by the First District in the Exxon case and stated:
I find no language in § 212.17, F.S., which prevents application of the general non-claims statute, § 215.26(2), F.S., and therefore conclude that its provisions control claims under § 212.17(2) and (3) for refunds, including credit allowances. (Emphasis added.)
Thus, determining that no legislative intent was expressed to make these statutes mutually exclusive, the Attorney General agreed with the First District in Exxon and Grant that the sections are independent of each other and not limited in their application by each other.[1] In fact, the Attorney *516 General continued his opinion and specifically addressed bad debt credits as follows:
Section 212.17(3) requires, in addition, that the credit allowed under its terms shall be claimed only for bad debts charged off “... during the period covered by the current return. ... ” Although the limitations of § 215.26(2) are restricted to “... refunds as provided by this section....” it covers overpayment of any tax and would therefore encompass claims under other specific statutory provisions such as § 212.17 by which overpayment or right to refund may be defined. (Emphasis added.)
Therefore, the limitation contained in § 212.17(3) to the effect that a bad debt credit can only be claimed against current sales tax obligations, is not construed as a statute of limitations or a non-claim statute which would preclude the application of the general refund statute, § 215.26.
For these reasons, it is respectfully suggested to this Court that there have been definitive interpretations of the refund statute in question which compelled this Court to apply a liberal construction in favor of the taxpayer, should it be necessary in deciding the issues raised in this case.
B. Section 215.26 — a remedial statute to be construed liberally to effectuate the remedy.
In the absence of a statute dealing with refunds for taxes paid in error, overpay-ments of taxes which result from mistake or error are not generally recoverable from a state. See Thompson v. Continental Southern Lines, Inc., 222 Ark. 108, 257 S.W.2d 375 (1953); Mayor and City Council of Baltimore v. Home Credit Co., 165 Md. 57, 166 A. 604 (1933).
To remedy this unjust result, various states have enacted refund provisions which allow a taxpayer to recover monies paid to the state to which the state would otherwise not be entitled. See Mayor and City Council of Baltimore, supra; Orpheum Circuit v. Los Angeles County, 12 Cal.App. 257, 55 P.2d 901 (1936); Commonwealth of Virginia v. Cross, 196 Va. 375, 83 S.E.2d 722 (1954). These refund statutes, which require states to repay money that is not technically theirs, are thus remedial statutes and construed accordingly. Id.
It is self-evident from the language of § 215.26 that the motivation behind the enactment of the general refund statute was to give the taxpayers in the State of Florida the vehicle, or the remedy, to recover from the State these monies which properly belong to the taxpayer and not to the State. Thus, as the statute itself reflects, the only monies recoverable by taxpayers under § 215.26 are those to which the State has no entitlement but which the State presently happens to have.
The general refund statute is clearly a remedial statute, as recognized by the cases cited above. The rule of construction in Florida and elsewhere is widely recognized and parallels identically that expressed by the Supreme Court of Florida in Walgreen. That rule is perhaps nowhere better stated than in this Court’s decision of Dotty v. State, 197 So.2d 315 (Fla. 4th DCA 1967):
Consistent with the intent of the Legislature, laws which are penal in nature should be strictly construed while laws that are remedial in nature should be construed liberally.... [A] statute relating to procedure is remedial in nature in that it gives a remedy and intends to abridge some defect or superfluities of the common law. 197 So.2d at 318.
This rule of construction for remedial statutes — a liberal construction which will broadly effectuate the remedy created — has been consistently recognized in Florida as being the appropriate rule for remedial statutes. See Becker v. Amos, 105 Fla. 231, 141 So. 136 (1932); Canada Dry Bottling Co. v. Meekins, Inc., 219 So.2d 439 (Fla. 3d DCA 1969).
[END OF QUOTE FROM APPELLANT’S BRIEF]
It is therefore my view that, as recommended by the hearing officer, a refund is *517 available to the appellant for the tax years 1975 and 1976 and that the majority opinion is in conflict with both the First District and the Supreme Court.
Moreover and finally, it is fundamentally unfair to deprive a merchant of a refund of a sales tax on goods on which he fails to conclude a sale. How far the amendment to Section 212.17(3) seeks to alleviate this unfairness is of little consequence in this case. The events here complained of took place before the amendment and it is thus doubtful if the majority has the right to rely so heavily on it.

. In view of this Attorney General’s opinion it is indeed ironic that it is the Attorney General who now successfully represents the Comptrol *516 ler before this court and obtains a result contrary to his own opinion.