510 So.2d 936 (1987)
FLORIDA EXPORT TOBACCO CO., INC., Miami International Airport Pharmacy, Inc., Sirgany International, Inc., and International Pharmacies, Inc., Appellants,
v.
DEPARTMENT OF REVENUE and Gerald Lewis, As Comptroller of the State of Florida, Appellees.
No. AY-145.
District Court of Appeal of Florida, First District.
June 26, 1987.
*937 J. Riley Davis, of Taylor, Brion, Buker & Greene, Tallahassee, for appellants.
Joseph C. Mellichamp, III, Asst. Atty. Gen., and Barbara Staros Harmon, Asst. Atty. Gen., Tallahassee, for appellees.

ON MOTION FOR REHEARING
ZEHMER, Judge.
The Department of Revenue and the Comptroller, appellees, have moved for rehearing and rehearing en banc on several grounds. Many of the constitutional, statutory, and decisional authorities cited in the motion and in appellants' response were not previously presented in the parties' briefs of the issues on appeal. Failure to initially argue these pertinent authorities has compelled us to completely reexamine the issues and holding in our opinion.
The Tax Section of The Florida Bar has filed, as amicus curiae, a motion in support of appellees' motion for rehearing en banc. We have considered the authorities and argument contained in that motion; however, we deny the Tax Section's request to file a supporting brief.
After careful consideration of the motions for rehearing and the results of our own additional research, we are persuaded that the motion for rehearing should be granted in part. Accordingly, our original opinion is withdrawn and the following opinion is substituted therefor. The motion for rehearing en banc is denied.

I.

THE FACTS
Appellants, Florida Export Tobacco Co., Inc., Miami International Airport Pharmacy, Inc., Sirgany International, Inc., and International Pharmacies, Inc., are plaintiffs in this class action against the Department of Revenue (DOR) and the Comptroller (appellees). In this suit appellants have contested the legality of DOR's assessment of certain taxes pursuant to section 212.031, Florida Statutes (1979), and have sought a refund of the taxes paid by them and the members of the class pursuant to such assessments. They appeal a summary judgment for appellees granted on the sole ground that the Comptroller's decision to deny a refund of the taxes in an administrative proceeding prosecuted by Florida Export pursuant to sections 215.26, 120.57, and 120.68, Florida Statutes (1979), is res judicata and bars this action in circuit court.
Appellants, concessionaires in the Miami International Airport terminal, leased property for this purpose from Dade County under a written lease agreement made in July 1977. Pursuant to this lease, appellants paid an annual rental computed on a square footage basis and paid their sales taxes due on that amount. In addition, they paid the county a profit participation charge computed as the amount by which a fixed percentage of appellants' gross revenues exceeded the rental payments. By letter to the lessor, Dade County, DOR demanded payment of the sales taxes on the profit participation charge in addition to the square footage charge, citing section 212.031 as authority, and appellants paid the taxes so demanded to the lessor for remittance to DOR.[1]
*938 On August 6, 1979, Florida Export filed a class action in the Leon County circuit court on behalf of itself and all similarly situated taxpayers. The suit, naming DOR as the sole defendant, contested the legality of the tax assessments on the profit participation charge and demanded refund of all such taxes previously paid.[2] DOR moved to dismiss the complaints on grounds that plaintiffs failed to exhaust available administrative remedies by not seeking a refund from the Comptroller under section 215.26.[3] The court dismissed the complaint with leave to amend "with sufficient time allowed to satisfy the requirements of § 215.26, Fla. Stat., so that the members of the class ... will be limited to those who have paid the challenged tax, applied for a refund, and were denied such refund"[4] (R. 37).
Each of the appellants then applied to the Comptroller for a refund on the ground that DOR's tax assessment on the profit participation charge was illegal because such funds did not constitute lease or rental payments within the meaning of section 212.031.[5] The refund application was referred to DOR, which reviewed its records and determined that the refund should not be paid. DOR so advised the Comptroller, and on July 24, 1980, the Comptroller notified appellants of his intent to deny the refund in accordance with DOR's recommendation. This notice also advised appellants that they had a right, under section 120.57, Florida Statutes (1979), to request an administrative hearing regarding the Comptroller's proposed decision and that, if no request were timely made, "this denial shall become final" (R. 111).
*939 The record reflects considerable uncertainty on the part of appellants' counsel regarding just how far to pursue the administrative proceeding with the Comptroller in order to satisfy the trial court's order requiring that application for refund must be administratively denied before the circuit court action could proceed.[6] In an apparent attempt to avoid waiver of administrative remedies and protect the rights of their clients, on August 6, 1980, counsel for appellants wrote a letter to the Comptroller indicating they did not intend to request a section 120.57 hearing unless failure to do so would be construed as failure to exhaust administrative remedies and prevent continued prosecution of the pending circuit court actions. DOR refused to agree that appellants need not completely exhaust all administrative remedies by applying for such hearing. Appellants, "out of an abundance of caution," requested an informal conference with the tax referee of DOR and filed a petition for a section 120.57 administrative hearing on behalf of themselves and "others in their class similarly situated" with the office of the Comptroller (R. 46). DOR was not made a party to that proceeding.
The Comptroller referred the petition to the Department of Administrative Hearings for assignment to a hearing officer. Prior to the section 120.57 hearing, all parties other than Florida Export took a voluntary dismissal and did not proceed to hearing. Counsel for petitioners stated on the record that, by proceeding to a section 120.57 hearing on the denial of refund, petitioners did not intend to waive any rights they had to continue prosecution of their circuit court action.[7] Counsel for petitioners, however, also stated on the record that the voluntary dismissal was taken with the understanding that the success obtained by Florida Export in the administrative proceeding would be "stare decisis" as to all *940 appellants.[8] Counsel for Florida Export and the Comptroller then debated the merits of the case before the hearing officer, i.e., whether the Comptroller should have denied the refund because the profit participation charges were legally taxable under section 212.031, Florida Statutes (1979). DOR, not being a party, did not participate. On March 19, 1981, the hearing officer issued a recommended order on the merits, finding the charges legally taxable and recommending that the Comptroller deny Florida Export's application for a refund.
While the recommended order was under consideration by the Comptroller, all appellants filed a motion for determination of legal issues in the circuit court action. That motion contended that the circuit court had jurisdiction of the case without the necessity of appellants further exhausting administrative remedies (R. 56-58). On April 6, 1981, the circuit court entered an order finding that it had jurisdiction over the dispute and that, under the facts and circumstances of the case, there was no need for appellants "to utilize administrative hearing procedures or exhaustive prosecution of these causes." The circuit court ruled, nevertheless, that since Florida Export had an administrative proceeding pending on the issue of the validity of the tax assessments, the court action would be stayed pending a final resolution of the administrative proceeding (R. 63-65).[9]
*941 On April 27, 1981, the Comptroller issued a final order ruling that the refund would be denied because the profit participation payments were taxable under section 212.031. Florida Export appealed the order to this court, which affirmed without opinion. Florida Export Tobacco Co., Inc. v. Office of Comptroller, 412 So.2d 475 (Fla. 1st DCA 1982).
On November 19, 1982, all appellants filed an amended complaint in the pending consolidated circuit court actions, naming the Comptroller, in addition to DOR, as defendants. The amended complaint alleged that the taxes assessed by DOR on the profit participation charges were illegal, that appellants' applications for refund of taxes previously paid were denied by the office of the Comptroller, and that appellants were entitled to an order declaring such taxes unlawful and invalid. Defendants moved for summary judgment on the ground that the relief sought by plaintiffs was barred under the doctrine of res judicata by the Comptroller's administrative decision affirmed by this court. On February 24, 1984, the circuit court granted final summary judgment, concluding as a matter of law that the doctrine of res judicata prohibited relitigation of the legal issues raised in the petition for administrative hearing. That judgment is before us on this appeal.

II.

THE ISSUES
Appellants raise two points. They contend that the Comptroller lacked jurisdiction to adjudicate the legality of the tax assessment by reason of section 20(c)(3), article V, Florida Constitution, as amended in 1972. This section states, "[U]ntil changed by general law consistent with sections 1 through 19 of this article," the circuit courts of this state "shall have exclusive original jurisdiction ... in all cases involving legality of any tax assessment or toll." Appellants argue that section 20(c)(3) provided exclusive jurisdiction in the circuit court to determine the legality of any tax assessment and that the administrative proceedings before the Comptroller were without subject matter jurisdiction and did not validly determine the legality of the challenged tax assessment. Therefore, appellants argue, the circuit court erred in determining that the administrative proceedings are res judicata because it is improper to give such effect to a judgment or order of a tribunal lacking subject matter jurisdiction.
For their second point, appellants argue that even if jurisdiction in the administrative agency be upheld, the doctrine of res judicata should not be applied when to do so defeats the ends of justice, and they cite authority to support this principle. Appellants contend that the evident confusion of the parties and the circuit judges concerning the proper procedure and need for exhaustion of administrative remedies, their perceived uncertainty of the effect of this court's affirmance, without opinion, of the Comptroller's decision, and their persistent attempts to preserve their right to proceed in circuit court, rather than by administrative proceedings, would make it unfair and unjust to deprive them of the right to litigate the tax assessment issue in circuit court. This is especially so, they say, since Florida Export was the only party to the administrative proceeding.
DOR and the Comptroller dispute appellants' contentions on several grounds. First, they suggest that no tax assessment is involved in this case. Primarily, however, they contend that the 1972 amendments to article V gave the legislature power to change by general law the circuit court's exclusive original jurisdiction over *942 disputes involving the legality of tax assessments, and that the appropriate administrative agency has been given, by implication, concurrent jurisdiction with circuit courts to decide the legality of tax assessments as a result of the enactment of the 1974 amendments to the Administrative Procedures Act, chapter 120, Florida Statutes. Appellees urge that the constitution has authorized this grant of quasi-judicial power to administrative officers or boards in matters connected with the functions of their offices, citing Transgulf Pipeline v. Board of County Commissioners, 438 So.2d 876 (Fla. 1st DCA 1983), pet. for rev. denied, 449 So.2d 264 (Fla. 1984); State, Department of Administration v. Stevens, 344 So.2d 290 (Fla. 1st DCA 1977), and other cases.
Appellees further argue that appellants have had the merits of the legality of the assessment fully and fairly litigated in the administrative proceeding, that the administrative decision has been upheld upon review by the appellate court, and that, therefore, the application of res judicata will not defeat the ends of justice.
Because the appropriate agency's exercise of quasi-judicial power is limited to matters connected with the functions of the administrative office, we note that the respective power, roles, and duties of DOR and the Comptroller in respect to determining the legality of tax assessments is a critical factor underlying appellees' argument.

III.

TAX ASSESSMENT
Initially, DOR and the Comptroller say we need not consider the effect of the constitutional provision regarding circuit court jurisdiction because appellants' actions seek only a refund of taxes for which no tax assessment was issued. Appellees cite no statutory or decisional authority for this contention, and we have found none which directly supports it.
The Florida Statutes do not contain a definition of assessment, so we must look to the ordinary definition and usage of the term in construing the constitution and statute. Southeastern Fisheries Ass'n, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984). "Assessment" is defined as "the act of assessing" or "an amount assessed." American Heritage Dictionary, page 79 (New College Edition 1979). The word "assess" is usually defined as including:
1. To estimate the value of (property) for taxation.
2. To set or determine the amount of (a tax, fine or other payment).
3. To charge (a person or property) with a tax, fine, or other special payment.
Id. at 79. See also Black's Law Dictionary (5th ed. 1979); Oxford English Dictionary (Compact Ed. 1971). With the accepted definitions in mind, we conclude that the term "assessment," as used in chapter 212, Florida Statutes, encompasses the instant situation, where a taxpayer has refused to pay a sales tax on a rental payment under chapter 212 and DOR has communicated the amount of taxes claimed to be due under that chapter and made a demand for the taxpayer to make payment. See § 212.14, Fla. Stat. (1979). Although section 212.031, Florida Statutes (1974), requires that a landlord bill and collect the sales tax on rental, file a return thereon, and remit payment to DOR, that section nevertheless places the tax on the tenant. Zero Food Storage v. Department of Revenue, 330 So.2d 765 (Fla. 1st DCA), cert. denied, 339 So.2d 1174 (Fla. 1976).[10] Accordingly, DOR's notice of tax due and demand for payment of the tax constitutes an assessment that is reviewable in circuit court. See Department of Revenue v. Ryder System, Inc., 406 So.2d 1299 (Fla. 1st DCA 1981). That such notice and demand amounts to a tax assessment is further supported by DOR's interpretation of the statutes in rule 12A-1.056(6), Florida Administrative Code, which provides that when a lessor fails to make a report and *943 pay the tax due, or makes a grossly incorrect report of the tax due, DOR "shall make an assessment from an estimate for the taxable period and shall proceed to collect such taxes on the basis of such assessment which shall be considered prima facie correct."
In the present case, appellants had not paid any sales tax on the profit participation charge to Dade County, and the county had not reported any tax due thereon when it filed its returns with DOR. DOR, therefore, "assessed" such taxes when it determined that Dade County's sales tax return was incorrect and communicated by letter to Dade County that the county was required to bill appellants for the sales taxes due on the profit participation charges, collect the taxes, and remit the collected monies to DOR. We hold that appellants' cause of action in this case amounts to a challenge of "the legality of a tax assessment" within the meaning of article V, section 20(c)(3), Florida Constitution, and the related implementing statutes hereafter discussed.

IV.

RES JUDICATA AND JURISDICTION
The propriety of the lower court's application of the doctrine of res judicata turns on whether the required identity of parties and issues was shown to exist, and whether the administrative tribunal had jurisdiction to adjudicate the issues said to bar the action in the court below.
Res judicata is not applicable unless the parties to the current proceeding were also parties to the prior proceeding said to have adjudicated the issue. Seaboard Coastline R.R. v. Industrial Contracting Co., 260 So.2d 860, 862 (Fla. 4th DCA 1972). For this reason alone the circuit court erred in granting summary judgment against the appellants other than Florida Export, because they took a voluntary dismissal from the administrative proceedings before it went to final hearing. The alleged statement of counsel that a favorable result in the Florida Export administrative proceeding would be stare decisis did not make these appellants parties to that proceeding and did not satisfy this essential requirement of the doctrine of res judicata. The statement did not make that proceeding binding on these appellants. See note 8 at p. 6, supra.
Res judicata cannot be predicated on the decision of a tribunal lacking jurisdiction. A judicial or quasi-judicial decision will not be given res judicata effect where rendered by a tribunal lacking subject matter jurisdiction. Florida National Bank v. Kassewitz, 156 Fla. 761, 25 So.2d 271 (1946); Bryant v. Small, 258 So.2d 459 (Fla. 3d DCA), cert. denied, 265 So.2d 51 (Fla. 1972). Subject matter jurisdiction can not be created by waiver, acquiescence or agreement of the parties, or by error or inadvertence of the parties or their counsel, or by the exercise of power by the court; it is a power that arises solely by virtue of law. Florida National Bank v. Kassewitz, 25 So.2d 271. See generally 32 Fla. Jur.2d, Judgments & Decrees, §§ 131, 332 (1981).
It is, therefore, essential to the validity of the trial court's ruling on res judicata that the Comptroller (the only party to the administrative proceeding) had subject matter jurisdiction, i.e., the power, to adjudicate appellants' challenge to the legality of the tax assessments against them. Whether the Comptroller had such power involves two lines of inquiry. The first is the extent to which constitutional and statutory provisions gave the Comptroller power to adjudicate the legality of tax assessments when this case was filed in 1979. The second is whether in 1979 the provisions of article V of the Florida Constitution and related statutes preserved in the circuit court exclusive original jurisdiction to decide the legality of disputed tax assessments.

A.

ADJUDICATORY POWER OF THE COMPTROLLER AND DOR
The Comptroller's powers and duties are delineated in article IV of the Florida Constitution and diverse implementing statutes. Section 4(d) of article IV provides *944 simply that "the comptroller shall serve as the chief fiscal officer of the state, and shall settle and approve accounts against the state." Chapter 17, Florida Statutes, prescribes the general powers and duties of the Comptroller. At all times material to this dispute, the Comptroller's authority regarding claims against the state was set forth in section 17.03(1), Florida Statutes (1979):
The Comptroller of this state, using generally accepted auditing procedures for testing or sampling, shall examine, audit, and settle all accounts, claims, and demands, whatsoever, against the state, arising under any law or resolution of the Legislature, and issue his warrant to the Treasurer directing him to pay out of the State Treasury such amount as shall be allowed by the Comptroller thereon.
The authority so prescribed is analogous to that of an accounting auditor charged with determining, in accordance with generally accepted auditing procedures, that the claim presented is correct in form and amount and is consistent with the substantive power of the agency ordering payment. We decline to construe this statutory provision to implicitly include the power to adjudicate the merits of the underlying claim, as is more fully explained hereafter.
Specific authority and responsibilities formerly placed on the Comptroller regarding assessment and collection of taxes may be found throughout several chapters in title XIV, Florida Statutes. Prior to 1963, the Comptroller was given complete authority to administer the various state tax statutes, including sales taxes under chapter 212, and to collect the revenues due pursuant to such statutes.[11] The Comptroller also was given authority under section 215.26, Florida Statutes (1961), to approve the refund of taxes upon a timely sworn application in proper form, "supplemented with such additional proof as is necessary to establish such claim."
In 1963 the legislature transferred the duties of administering the tax statutes from the Office of the Comptroller to the State Revenue Commission. Ch. 63-253, § 7, Laws of Florida. Section 212.15, Florida Statutes (1963), as amended, provided that all taxes collected under chapter 212 would be remitted to the Commission and that any taxpayer who contested an assessment under chapter 212 would have the right to request the Commission to reexamine the assessment. If the Commission's decision was determined adversely to the taxpayer, then the taxpayer had the right to bring an action in circuit court to challenge the legality of the assessment. Section 215.26, however, continued to provide the Comptroller with authority to pay refunds.
In 1969 the legislature created the Department of Revenue and transferred to it the authority to administer the tax statutes and to collect taxes due. Ch. 69-106, § 21(2), Laws of Florida. Section 212.15(4) was amended by that chapter to provide that DOR review and determine contested tax assessments prior to the taxpayer's bringing an action in circuit court. Ch. 69-106, §§ 21, 35, Laws of Florida. Certain portions of the 1969 amendments remained in effect at the time of this dispute. See §§ 213.05 and 212.18(2), Fla. Stat. (1979). The statutory authority of the Comptroller to pay refunds under section 215.26 was not altered by the 1969 act.
Thereafter, the authority of the Comptroller and DOR regarding tax assessments and refunds remained unchanged until 1978. In that year the legislature repealed section 212.15(4), Florida Statutes (1977), which had given taxpayers the right to have tax assessments under chapter 212 reviewed by DOR prior to initiating a proceeding in circuit court. Ch. 78-95, Laws of Florida. In the introductory clause to that law, it was stated that section 212.15(4) was in conflict with or had been rendered unnecessary by the Administrative Procedures Act, chapter 120, Florida Statutes. The legislature also amended section *945 215.26, Florida Statutes, to read as quoted in note 3, supra.[12]
This amendment to section 215.26 clarified the respective roles of DOR and the Comptroller in the administration of the sales tax statutes and applications for refunds. It expressly directed that applications for refund be filed with and received by the Comptroller, but further gave the Comptroller discretion to delegate this ministerial function of receiving applications to the state agency vested by law with the responsibility to collect the tax (DOR in this instance). Upon receipt of such application, however, only the agency to which the tax had been paid (DOR) was empowered to determine the amount of the tax and authorize a refund. The Comptroller continued to have authority under section 215.26 to refund taxes paid with monies from the state treasury, but only upon DOR's approval manifested in a properly executed voucher authorizing such payment. We have found no statutory provision giving the Comptroller authority to overrule DOR's determination regarding the legality of the tax assessment and the right to a refund.
Our review of the constitutional and statutory provisions establishing the respective authority of the Comptroller and DOR leads us to conclude that in 1979 the Comptroller had no administrative power to review and adjudicate the legality of tax assessments made by DOR under chapter 212. That administrative power lay only with DOR. Section 215.26 vested authority in the Comptroller to order disbursement of funds from the state treasury only after DOR, the state agency charged with administering the sales tax statute, recommended a refund and furnished a voucher to the Comptroller, who in turn was to determine that DOR's voucher was in proper form and duly executed and issued pursuant to DOR's legal authority.
This conceptual nature of the Comptroller's power and duties was aptly described in Florida Development Commission v. Dickinson, 229 So.2d 6 (Fla. 1st DCA 1969), cert. denied, 237 So.2d 530 (Fla. 1970):
The trial judge described the duty imposed upon the Comptroller by the Constitution as it relates to payment of accounts against the state most fully, and we think it appropriate to quote from his order the following material observations:
It is the duty of the Comptroller, before issuing a warrant for the payment of an account against the state, to make an administrative determination that the money is in the state treasury, that an appropriation has been made by law to pay the account, and that the expenditure is within the law fixing the powers of the state agency incurring the obligation. The Comptroller has no authority to supervise the operation of other state officers or state agencies in the exercise of the discretion vested in them by law. Neither does he have the power to veto their action in the performance of their legal duties. On the other hand, the duty of the Comptroller to audit, adjust and settle the accounts of all officers of the state, conferred by Section 23, Article IV, of the Constitution, would be destroyed *946 if the Comptroller is required to pay all bills approved by all state officers without exercising any power to ascertain that the proposed expenditure of state funds is authorized by law.
So long as an expenditure is within the lawful power of another officer, the Comptroller has no authority to, in any manner or to any degree, control the exercise of the official discretion of that officer in the expenditure of state funds. But if any state agency exceeds its lawful power or goes outside the scope of the discretion vested in it by law in incurring obligations, it is the duty of the Comptroller to refuse to issue state warrants in payment of such obligations.
The complexity of modern government is such that it is not infrequent that questions arise as to the proper construction of statutes authorizing and regulating the expenditure of state funds. The agency administering a statute must, in the first instance, make an administrative determination of the scope of its powers. That determination is entitled to great respect from, but is not absolutely binding upon, the Comptroller. If the Comptroller is convinced that another state officer or agency has exceeded its lawful powers in incurring a bill against the state, it is the duty of the Comptroller to refuse to issue a warrant for the payment of that bill from state funds until such time as there has been a determination of the question. In many instances such determination is accomplished by an opinion of the Attorney General. However, the Comptroller has the legal right to refuse to be a party to a disbursement of public funds which he considers illegal until there has been a judicial determination of the validity of the proposed expenditure.

229 So.2d at 8 (emphasis added.)
To summarize, according to the explicit terms of section 215.26, DOR was required to review applications for tax refunds and determine the legality of its assessment. If DOR determined that the refund should be denied, it was required to notify the applicant of such denial and state the reasons therefor. If DOR determined that a refund should be granted, then it was required to forward to the Comptroller a properly executed voucher authorizing payment of such refund. At that time the Comptroller had authority to review the voucher to assure that it was in due form, correct in amount, and properly executed by DOR. But the Comptroller was not given statutory authority to review and adjudicate the substantive legality of the disputed assessment by evaluating the facts and law and substituting his own judgment for the legal reasons relied upon by DOR in authorizing or denying the requested refund.
In this case appellants applied to the Comptroller for a refund under section 215.26 on grounds that sales taxes could not be legally assessed on the profit participation charges. Their applications were referred by the Comptroller to DOR, and DOR determined to deny the claim. The Comptroller then advised appellants of this denial and that they had a right to a section 120.57 hearing. An administrative hearing was timely requested and held, but only Florida Export and the Comptroller were parties to the hearing and final order entered in that administrative proceeding. After hearing evidence and argument on the legality of the tax assessment, the hearing officer recommended that the legality of the assessment be sustained and the refund denied. This recommended order was reviewed and approved by the Comptroller, not by DOR, even though whether the hearing officer's recommended findings and conclusions of law on the legality of the assessment should be approved fell within DOR's authority, not the Comptroller's. Hence, DOR was an essential party to the administrative adjudication of the legality of the claim for refund. The importance of having DOR, rather than the Comptroller, review the hearing officer's recommended order is materially enhanced by the fact that all members of the cabinet,[13] *947 not just a single member, may participate in DOR's decision on the legality of the tax assessment.
Appellees' have erroneously assumed in their briefs, without citation of authority, that the Comptroller was empowered to adjudicate the legality of appellants' claims for refund. Certainly the Comptroller was authorized to issue a warrant for the payment of the requested refund and was a proper party to the administrative proceeding; but most assuredly he was not the only essential party. We find no statutory support for appellees' assumption that the Comptroller alone could adjudicate the legality of the disputed assessment or provide substantive review of the grounds of DOR's denial of the refund applications in a section 120.57 proceeding. Nor have we found any reported case holding that DOR is not an essential or necessary party to such proceeding.[14]
Irrespective of whether DOR was an essential party, however, it nevertheless follows that DOR's absence as a party to Florida Export's administrative proceeding for refund has deprived that administrative decision of the attributes previously discussed, i.e., the identity of essential parties and issues, required to make that decision binding and support the application of res judicata in this court action against DOR.[15]

B.

CIRCUIT COURT JURISDICTION
Determining whether the circuit court had been divested by general law of its historic exclusive original jurisdiction to adjudicate the legality of tax assessments requires careful review of the article V amendments and implementing statutes.
Article V, section 1, of the 1968 Florida constitution vested the judicial power of Florida in the various courts and, alternatively, in legislatively established commissions. It provided as follows:
Courts.  The judicial power of the State of Florida is vested in a supreme court, district courts of appeal, circuit courts, Court of Record of Escambia County, criminal courts of record, county courts, county judge's courts, juvenile courts, courts of justices of the peace, and such other courts, including municipal courts, or commissions, as the legislature may from time to time ordain and establish.
Section 6, article V, of the 1968 constitution was entitled "Circuit Courts." Subsection 6(3), formerly section 11, article V, of the 1885 constitution (prior to the 1956 revision), was entitled "Jurisdiction." This subsection specified the jurisdiction of circuit courts as follows:
JURISDICTION. The circuit courts shall have exclusive original jurisdiction in all cases in equity except such equity jurisdiction as may be conferred on juvenile courts, in all cases at law not cognizable by subordinate courts, in all cases involving the legality of any tax, assessment, or toll, in the action of ejectment, in all actions involving the titles or boundaries of real estate, and in all criminal cases not cognizable by subordinate courts. They shall have original jurisdiction of actions of forcible entry and unlawful detainer, and of such other matters as the legislature may provide.
(Emphasis added.) Thus, the 1968 constitution unambiguously authorized circuit courts to exercise exclusive original jurisdiction over all cases involving the legality of any tax, assessment, or toll.
Article V was substantially rewritten in the 1972 amendment. Section 1 continued to be the section vesting judicial power and was expanded to read as follows:
COURTS.  The judicial power shall be vested in a supreme court, district courts *948 of appeal, circuit courts and county courts. No other courts may be established by the state, any political subdivision or any municipality. The legislature shall, by general law, divide the state into appellate court districts and the judicial circuits following county lines. Commissions established by law, or administrative officers or bodies may be granted quasi-judicial power in matters connected with the functions of their offices.

(Emphasis added.) With this change of language, the constitution permitted the legislature, by duly enacted legislation, to grant appropriate quasi-judicial power to administrative officers or bodies so long as it pertained to matters connected with the functions of their offices. Section 5(b) of article V, as amended in 1972 (formerly section 6(3) of article V, 1968 constitution), described the jurisdiction of circuit courts:
JURISDICTION.  The circuit courts shall have original jurisdiction not vested in the county courts, and jurisdiction of appeals when provided by general law. They shall have the power to issue writs of mandamus, quo warranto, certiorari prohibition and habeas corpus, and all writs necessary or proper to the complete exercise of their jurisdiction. Jurisdiction of the circuit court shall be uniform throughout the state. They shall have the power of direct review of administrative action prescribed by general law.
(Emphasis added.) It should be noted that the words "original jurisdiction" were no longer modified by the word "exclusive." Section 20, article V, as adopted in 1972, carried forward the existing jurisdiction of the circuit courts in the following language:
SECTION 20. Schedule to Article V. 
(a) This article shall replace all of Article V of the Constitution of 1885, as amended, which shall then stand repealed.
(b) Except to the extent inconsistent with the provisions of this article, all provisions of law and rules of court in force on the effective date of this article shall continue in effect until superseded in the manner authorized by the constitution.
(c) After this article becomes effective, and until changed by general law consistent with sections 1 through 19 of this article:

* * * * * *
(3) Circuit courts shall have jurisdiction of appeals from county courts and municipal courts, except those appeals which may be taken directly to the supreme court; and they shall have exclusive original jurisdiction in all actions at law not cognizable by the county courts; of proceedings relating to the settlement of the estate of decedents and minors, the granting of letters testamentary, guardianship, involuntary hospitalization, the determination of incompetency, and other jurisdiction usually pertaining to courts of probate; in all cases in equity including all cases relating to juveniles; of all felonies and of all misdemeanors arising out of the same circumstances as a felony which is also charged; in all cases involving legality of any tax assessment or toll; in the action of ejectment; and in all actions involving the titles or boundaries or right of possession of real property.
(Emphasis added.) Section 20, being a schedule to article V, was intended to provide for the transition from the old to the new court system and served to preserve the existing jurisdiction of all courts "until changed by general law" consistent with sections 1 through 19 of article V. Thus, section 20 continued exclusive original jurisdiction over the legality of tax assessments in circuit courts.
We agree with DOR and the Comptroller that the 1972 amendments to the constitution authorized the legislature to give administrative officers and agencies quasi-judicial jurisdiction in matters connected with the functions of their offices, and that such jurisdiction could legally be exercised concurrently with original, nonexclusive jurisdiction given to circuit courts over the same matters. See State ex rel. Jones v. Wiseheart, 245 So.2d 849 (Fla. 1971); State ex rel. York v. Beckman, 160 Fla. 810, 36 So.2d 769 *949 (1948); State v. Sullivan, 95 Fla. 191, 116 So. 255 (1928). We likewise agree that such "quasi-judicial jurisdiction" could, by general law expressly so providing, embrace disputes over the legality of tax assessments. Based upon extensive additional research and study, we find no legal impediment to the legislature's enactment of general legislation to permit DOR to administratively adjudicate the legality of tax assessments, should the taxpayer so elect. The critical question, however, is to what extent, if any, the legislature had done so by 1979, when this controversy arose and the court proceeding was filed.
In 1972 the Florida legislature implemented the amendments to article V respecting circuit court jurisdiction by providing in section 26.012, Florida Statutes (1972 Supp.), that circuit courts "shall have exclusive original jurisdiction" in "all cases involving legality of any tax assessment or toll." The constitutional and statutory changes made in 1972 did not, therefore, abrogate the existing exclusive original jurisdiction of circuit courts in such cases, but merely provided that such jurisdiction could be expressly "changed by general law." Williams v. Law, 368 So.2d 1285 (Fla. 1979); St. Joe Paper Co. v. Metropolitan Dade County, 418 So.2d 1013 (Fla. 3d DCA 1982), pet. for rev. denied, 430 So.2d 451 (Fla. 1983).
Section 212.15, Florida Statutes (1973),[16] readopted without change by section 11.2421, Florida Statutes (1973), also left undisturbed the exclusive original jurisdiction of circuit courts over actions challenging the validity of tax assessments. Cf., Williams v. Law, 368 So.2d 1285; St. Joe Paper Co. v. Metropolitan Dade County, *950 418 So.2d 1013. Section 212.15 directed the circuit court to determine the legality of the assessment and contained provisions requiring the taxpayer to either pay or secure the payment of the disputed taxes as a condition of filing suit.
DOR and the Comptroller contend that in making massive revisions to the Administrative Procedures Act in 1974 by enactment of chapter 74-310, Laws of Florida, "the legislature ... exercised its authority in art. V, § 1, and ... granted to the Department of Revenue and the Comptroller quasi-judicial power to conduct administrative hearings concerning matters connected with the functions of their offices." (Appellees' motion for rehearing, p. 8). But we have found no statutory or decisional authority to support a construction of chapter 74-310 as divesting the circuit courts of their exclusive original jurisdiction over tax assessment controversies.
No provision in chapter 74-310 expressly granted agency jurisdiction over the legality of tax disputes in contravention of the otherwise explicit constitutional and statutory provisions discussed above. Section 120.57 merely provided in general language that any person substantially affected by agency action would be entitled to an administrative hearing in respect to the matter in dispute as part of the process leading to final agency action. No attempt was made to amend the provisions of the statutes explicitly giving circuit courts exclusive original jurisdiction over the legality of tax assessments. Section 3 of chapter 74-310 provided that:
(1) The intent of the legislature in enacting this complete revision of chapter 120, Florida Statutes, is to make uniform the rule-making and adjudicative procedures used by the administrative agencies of this state. To that end, it is the express intent of the legislature that the provisions of this act shall replace all other provisions in the Florida Statutes, 1973, relating to rulemaking, agency orders, administrative adjudication or judicial review, except marketing orders adopted pursuant to chapters 573 and 601, Florida Statutes, and that the division of statutory revision of the joint legislative management committee is directed to prepare a reviser's bill to conform the Florida Statutes to such intent.

(Emphasis added.) Yet section 26.012(2)(e) (giving circuit courts "exclusive original jurisdiction") was not repealed, revised, or amended in any reviser's bill pursuant to this direction; rather, it remained intact and in full force and effect until amended in 1981 (see discussion, infra, pp. 952-953).
Moreover, in 1975 the legislature enacted chapter 75-191, § 11, Laws of Florida, which provided language in section 120.73 to explicitly clarify that chapter 74-310 was not intended to repeal statutory provisions granting the right to proceed in circuit court rather than by administrative hearing. That section specifically stated:
Nothing in this chapter [120] shall be construed to repeal any provision of the Florida Statutes which grants the right to a proceeding in the circuit court in lieu of an administrative hearing... . If any action has been dismissed or otherwise disposed of on the ground that a provision of the statutes granting the right to a trial or the jurisdiction to render declaratory judgments was repealed by chapter 74-310, Laws of Florida, such action shall be reinstated by order of the court upon the filing of a petition by the plaintiff at any time during the 60-day period immediately following the effective date of this act.
In the years immediately following the 1974 amendments to chapter 120, DOR attempted to establish through litigation in the courts that chapter 120 provided the taxpayers an administrative remedy for handling tax disputes that was itself exclusive of circuit court jurisdiction. Several cases between DOR and taxpayers considered that argument and consistently held that the historical original jurisdiction of circuit courts over such matters was not affected or impliedly repealed by the provisions of chapter 120. Department of Revenue v. Amrep Corp., 358 So.2d 1343 (Fla. 1978); Department of Revenue v. University Square, Inc., 336 So.2d 371 (Fla. 1st *951 DCA), cert. denied, 342 So.2d 1101 (Fla. 1976); Accord State ex rel. Department of General Services v. Willis, 344 So.2d 580, 589 (Fla. 1st DCA 1977); Department of Revenue v. Crisp, 337 So.2d 404 (Fla. 2d DCA 1976), cert. denied, 346 So.2d 1248 (Fla. 1977); Department of Revenue v. Estero Bay Development Co., 336 So.2d 479 (Fla. 2d DCA 1976), cert. denied, 345 So.2d 422 (Fla. 1977); Department of Revenue v. Joanos, 364 So.2d 24 (Fla. 1st DCA 1978), cert. denied, 372 So.2d 467 (Fla. 1979). In University Square, Inc., 336 So.2d at 371-72, Judge Mills succinctly stated the rationale underlying this conclusion:
Section 120.73, Florida Statutes, clearly expresses the intent of the Legislature that circuit courts retain jurisdiction to determine the legality of contested documentary tax assessments by way of declaratory judgment actions.
In response to the Department's argument, it is our opinion that there are no provisions in Chapter 120, Florida Statutes, which directly or by implication divest the circuit courts of their historical jurisdiction to determine the issues in contested documentary tax assessment actions. We are confident that had the Legislature intended to do this, it would have said so in specific language, and would have expressly repealed the inconsistent laws.
In a similar vein, in Department of Revenue v. Crisp, 337 So.2d at 405, the court stated:
The Florida legislature has determined that the circuit courts shall have exclusive original jurisdiction in all cases in equity and in all cases involving legality of any tax assessment. Fla. Stat. § 26.012(2)(c), (e); Fla. Const., art. V, sec. 20(3). See Department of Revenue v. University Square, Inc., Fla.App. 1st 1976, 336 So.2d 371. We agree with the reasoning of the First District Court of Appeal in University Square that if the legislature had intended to divest the circuit courts of jurisdiction over this matter it would have repealed or amended Fla. Stat. § 26.012. Department of Revenue v. University Square, Inc., supra. There is a significant difference between the hearings authorized by Fla. Stat. § 26.012 and those of Fla. Stat. § 120.68. Section 26.012 requires that the circuit court sit as a court of original jurisdiction providing an opportunity for full judicial proceedings while 120.68(4) limits the district court of appeal to appellate jurisdiction where the scope of review is confined to the record transmitted to it by the agency. We do not believe that the restricted review authorized by the APA preempts the complete hearing prescribed in 26.012.
In Department of Revenue v. Amrep Corp., 358 So.2d 1343, the supreme court concurred with the rationale in University Square and Crisp. After noting that section 26.012, Florida Statutes (1975), contained provisions for "exclusive original jurisdiction" in the circuit courts "in all cases involving legality of any tax assessment," the court stated:
In like fashion, Article V, Section 20(c)(3), Florida Constitution, provides, inter alia, that "until changed by general law" circuit courts shall have exclusive original jurisdiction "in all cases involving legality of any tax assessment or toll." We concur with the holding and reasoning of the District Court of Appeal, First District, in Department of Revenue v. University Square, Inc., supra, that there are no provisions in Chapter 120, Florida Statutes, including Section 3 of Chapter 74-310, Laws of Florida, which directly or by implication divest the circuit courts of their historical jurisdiction to determine the issues in contested tax assessment actions such as the dispute in the instant case.
358 So.2d at 1348-49.
Once more we conclude that the 1974 revisions to chapter 120, as enacted in chapter 74-310, Laws of Florida, did not explicitly or impliedly repeal or modify the constitutional and statutory provisions giving circuit courts both original and exclusive jurisdiction of cases contesting the legality of a tax assessment and seeking a *952 refund of taxes paid.[17] Section 20 of article V, and section 26.012(2)(e), Florida Statutes (1979), continued to vest exclusive original jurisdiction in the circuit courts to hear and resolve disputes over the legality of tax assessments until such time as section 26.012 should be amended by general law expressly altering that explicit provision for exclusive jurisdiction.
Appellees argue that this result is inconsistent with the supreme court's decision in Department of Revenue v. Amrep Corp., as the court in that case recognized the existence of concurrent jurisdiction of the administrative agency and circuit courts by the language in footnote 5 to that opinion. That footnote states:
The conclusion that this action is cognizable as a matter of original jurisdiction in the circuit court does not affect the jurisdiction of the district courts of appeal and this Court to review agency action pursuant to § 120.68, Fla. Stat. (1975).
(Emphasis in original.) 358 So.2d at 1349, n. 5. But this argument by appellees overstates the import of the Amrep Corp. decision. The footnote refers only to "original jurisdiction" because the court was not deciding whether "exclusive" jurisdiction of tax assessment disputes lay in the circuit court, but deciding whether such courts continued to possess original jurisdiction by virtue of the cited constitutional and statutory provisions. Moreover, the footnote is appended to a discussion of this court's opinion in Department of Revenue v. Young American Builders, 330 So.2d 864 (Fla. 1st DCA 1976), concerning court jurisdiction to decide constitutional attacks on the validity of Department of Revenue rules, and therefore must be read in context with the issues being decided in Amrep Corp., i.e., the constitutional validity of section 199.023(7), Florida Statutes (1975). Certainly, final agency action deciding matters not falling within the exclusive original jurisdiction of circuit courts, such as claims based on events occurring subsequent to a valid assessment and payment of taxes, may be properly reviewed under section 120.68 if the party elects, despite a statutory provision for original (but not exclusive) jurisdiction of such disputes in circuit court. It would appear, therefore, that the quoted footnote was included only to obviate a misconstruction and misapplication of the court's Amrep opinion in other contexts. Cf. Estate of W.T. Grant Co. v. Lewis, 358 So.2d 76 (Fla. 1st DCA 1978), aff'd, 370 So.2d 764 (Fla. 1979), in which this court accepted jurisdiction under section 120.68 to review DOR's denial of a sales tax refund over contentions by DOR and the Comptroller that exclusive jurisdiction of this question lay in the circuit court, because the issue under review did not involve the legality of a tax assessment, "but rather involves solely the question of petitioner's right to a refund of sales taxes lawfully assessed in the first instance but for which petitioner contends it became entitled to refund due to a condition arising subsequent to the assessment." 358 So.2d at 78.[18]
We also attach no controlling significance to the repeal, in 1978, of section 212.15(4), which provides for review in the circuit court of Leon County,[19] by section 54, chapter 78-95, Laws of Florida. Section 26.012, not section 212.15, vested exclusive jurisdiction in circuit courts to hear *953 tax assessment cases. Section 54 left intact the provisions in section 212.15(5) which described the powers and duties of circuit courts when hearing tax assessment cases. The repeal of provisions in section 212.15(4) did not expressly affect circuit court jurisdiction to adjudicate the legality of tax assessments, and we find no basis for treating this 1978 enactment as impliedly repealing or modifying the provisions of section 26.012. Applying the test enunciated in Department of Revenue v. Amrep Corp., 358 So.2d at 1348, we do not view section 54 of chapter 78-95 as a "positive repugnancy" to section 26.012, and thus hold that section 54 was not "clearly intended to prescribe the only governing rule, or that it revises the subject matter of the former."
Review of subsequent legislative history with respect to section 26.012(2) is appropriate to confirm our interpretation of legislative intent that circuit courts continued to have exclusive original jurisdiction over the legality of tax assessments. See Parker v. State, 406 So.2d 1089, 1092 (Fla. 1982). Prior to 1981 widespread confusion existed throughout this state regarding required tax procedures and the proper forum for resolving state tax controversies. See generally 1 Florida State & Local Taxes, paragraph 10.04 (The Florida Bar 1984); 2 Florida Administrative Practice Manual, § 15.05(e). In 1981 the legislature enacted chapter 81-178, Laws of Florida, entitled "An act relating to civil procedures in certain tax controversies," in an attempt to eliminate the prevailing confusion by making significant revisions to the statutes relating to civil tax procedures for contesting the legality of tax assessments. Of particular relevance to this case are the amendments to section 26.012(2)(e), the creation of new section 72.011, and the repeal of section 212.15(5).
Section 1, chapter 81-178, amended section 26.012(2) to add the following underlined language providing that circuit courts "shall have exclusive original jurisdiction ... (e) In all cases involving legality of any tax assessment or toll, except as provided in s. 213.19." The creation of this exception by the legislature manifested explicit recognition that exclusive original jurisdiction of cases contesting the legality of tax assessments had been placed in circuit courts by section 26.012(2)(e) up to that time. Had the legislature intended, through any of its prior statutory enactments and amendments, to deprive the circuit courts of this historical exclusive original jurisdiction in tax assessment cases and permit only concurrent jurisdiction with the appropriate administrative agency, the adoption of the statutory exception to facilitate such administrative action, as done by this 1981 amendment, would have been unnecessary and a clearly superfluous act.
Section 213.19 referred to in this amendment (later codified as section 72.011 in Florida Statutes 1981) was an entirely new section created by section 11 of chapter 81-178.[20] Section 72.011 provided detailed *954 provisions by which a taxpayer could contest the legality of a tax assessment under chapter 212 (and other chapters in title XIV, Florida Statutes) "by filing an action in circuit court, or alternatively the taxpayer may file a petition under the applicable provisions under chapter 120." It expressly precluded the taxpayer from filing an action in court once a section 120.56, 120.565, or 120.157 proceeding had been initiated regarding the same subject matter, and expressly limited appellate review in such instances to that provided under section 120.68. On the other hand, once a court action had been initiated, no action could be initiated under chapter 120. Essentially, the statute permitted the taxpayer to proceed in an administrative hearing or in court without first having to pay the disputed tax. It required, however, as a condition to filing an action in court, that the taxpayer tender the disputed amount into the registry of the court or post a bond to secure payment of the disputed tax. But most significant to this case, section 72.011(5) made the alternative administrative procedure established by section 72.011 "not applicable to actions for refund for taxes previously paid."
It is obvious, therefore, that in 1981 the legislature expressly authorized, for the first time, an administrative procedure for contesting tax assessments and expressly changed by general law the existing exclusive original jurisdiction of circuit courts, but explicitly excepted from this administrative procedure "actions for refund of taxes previously paid." See 50 Fla.Jur.2d, Taxation, §§ 13:2-4 (1983). Newly created section 72.011, when read in para materia with section 26.012(2)(e), as amended, thus preserved the exclusivity of circuit court original jurisdiction in tax refund cases. For this reason, the explicit legislative clarification of DOR's concurrent jurisdiction made in section 72.011, Florida Statutes (1981), even if susceptible to retroactive effect as suggested by appellees, would not remove this refund case from the circuit court's exclusive original jurisdiction.[21] Additionally, we note that section 18, chapter 81-178, repealed subsection (5) of section 212.15, and justifiably so, as those provisions had now been made superfluous by the new provisions in section 72.011.
Moreover, this statutory scheme substantially parallels the federal practice and procedure regarding income taxes under the Internal Revenue Code. See 1 Fla.State & Local Taxes, paragraph 10.04[1] (Fla.Bar 1984).[22] Notably, the federal procedure requires that refund actions be filed in federal *955 district courts (where a jury trial may be obtained[23]) or in the Court of Claims. See generally 34 Am.Jur.2d, Federal Taxation, paragraph 9324.
Therefore, in the face of such consistent statutory provisions explicitly granting circuit courts exclusive original jurisdiction of actions for refund based on the illegality of the tax assessment, we decline to imply that the amendments to chapter 120 in chapter 74-310, Laws of Florida, afforded either DOR or the Comptroller concurrent jurisdiction in such cases.

C.

CONCLUSION
To summarize, appellants were assessed and paid taxes on their profit participation lease payments. Thereafter they sought determination of the legality of the assessment and refund of the taxes so paid by filing an action against DOR in circuit court. After the filing of that action, at the somewhat ambiguous direction of the circuit court, they filed an administrative claim for refund with the Comptroller.[24] When the claim was denied, Florida Export pursued a petition for section 120.57 administrative review. DOR, although an essential party to that dispute, was not made a party to the administrative proceeding. The Comptroller did not have the power to adjudicate the merits of the legality of the assessment. Appellants did not, by their attempts to comply with the circuit court's directions to seek a refund, waive or stipulate away their rights to pursue their action in circuit court.[25] Under the circumstances, the circuit court had exclusive original jurisdiction to adjudicate the legality of the tax assessment against appellants in their refund action. It was error, therefore, for the trial court to grant summary judgment on the grounds of res judicata.
DOR and the Comptroller, and also the Tax Section's motion, point out that several hundred cases by taxpayers with DOR and the Comptroller have been handled administratively, and that the district courts of appeal and the supreme court have affirmed decisions in a number of those cases without questioning the jurisdiction of the administrative agencies. They further argue that the validity of those decisions will be placed in jeopardy by a ruling that circuit courts have exclusive original jurisdiction in this case, especially if such ruling is made retroactive. For all we know, the precise jurisdictional question presented in this case was presented in none of those cases, so we cannot treat those cases as controlling. Jurisdiction is conferred on courts and administrative agencies by constitutional provisions and statutes duly enacted by the legislature, not by court decision. Our function is limited to reasonably construing the lawful language of those provisions without enlarging by implication a tribunal's specified jurisdiction simply because such jurisdiction may have been exercised previously without objection and it now seems politic or, for that matter, in the public interest to create or recognize such enlarged jurisdiction. Under section 1, article V, of the Florida constitution, only the legislature has the power to confer and specify the extent of an administrative agency's quasi-judicial jurisdiction.
To avoid unnecessary concern and misinterpretation of this opinion, it is appropriate to state what we do not decide. We do not find it necessary to reach and decide whether the 1981 and subsequent amendments creating section 72.011 can be given retroactive effect in appropriate cases, nor do we decide the extent of DOR's quasi-judicial power to adjudicate tax disputes not involving tax refund claims such as this. *956 We also do not decide whether this decision must be given retroactive effect to invalidate decisions in other cases which have proceeded to finality. Our decision today should be read as passing, based on the facts before us, only on the narrow issues presented by these appellants and, further, with particular emphasis on DOR's absence as a party to the administrative proceeding and the pendency of the refund action against DOR in the circuit court when that administrative proceeding was initiated.
In view of this disposition, we do not reach appellants' second point.
The appealed judgment is reversed and the cause is remanded for further proceedings.
REVERSED and REMANDED.
MILLS, J., concurs.
ERVIN, J., dissents with written opinion.
ERVIN, Judge, dissenting.
I respectfully dissent. The majority's opinion on rehearing now recognizes that if statutory authority exists, the Department of Revenue (DOR) and the Comptroller would, since the 1972 amendment to Article V of the 1968 Florida Constitution, have concurrent jurisdiction with the circuit courts to rule on the legality of a tax assessment in a proceeding brought on a taxpayer's application for refund of taxes paid. I also have no difficulty in agreeing with the majority's view that if the application for refund involves only a contest over the legality of a tax assessment, an administrative agency  prior to October 1, 1981, the effective date of Chapter 81-178, Laws of Florida, amending the circuit court's exclusive original jurisdiction over the legality of tax assessments  had no jurisdiction to consider such issue. See also Department of Revenue v. Amrep Corp., 358 So.2d 1343 (Fla. 1978).
Because the alternative procedure provided by Chapter 81-178, permitting a taxpayer to contest the legality of the assessment of a tax by filing an action in circuit court, or a petition pursuant to Chapter 120, was not applicable to actions initiated before the effective date of the act, see Chapter 81-178, Section 19, and the action below was brought in circuit court on August 6, 1979, neither DOR nor the Comptroller can rely upon the provisions of the amended statute as a valid basis for their argument that jurisdiction over such issue resided with the Comptroller at the time of the proceeding below. And, it is clear that if the Comptroller lacked the requisite jurisdiction to decide the question, the doctrine of exhaustion of administrative remedies would not be, for the reasons stated in the majority's opinion, applicable.
My disagreement with the majority's position is, however, with its conclusion that the Comptroller necessarily determined the legality of the tax assessment. I think it more accurate to say that in denying the request for a refund, he determined the legality of the tax. The terms "tax" and "tax assessment" have distinct, separate meanings. Although the word taxation, as used in the Florida Constitution, embraces both assessment and collection, see 50 Fla. Jur.2d, Taxation, § 1:1 (1983), taxation is not the same as tax, which is defined as a forced burden or charge, an imposition or contribution assessed by some reasonable rule of apportionment on persons or property. Id. at 1:2. An assessment, on the other hand, is more than a charge, burden or contribution. In its strictest sense, the assessment of a tax is an official estimate of the sums which are to constitute the basis of an apportionment of a tax. 72 Am.Jur.2d, State and Local Taxation § 704 (1974). The term, however, means more than the amount assessed; it includes the whole statutory mode of imposing the tax, as well as all of the proceedings for raising money by the exercise of the power of taxation from the inception to the conclusion of the proceedings. Id.
The distinction between the two terms was implicitly observed in Article V, Section 6(3) of the Florida Constitution of 1885, wherein, in defining the circuit courts' jurisdiction, it was provided: "The circuit court shall have exclusive original jurisdiction ... in all cases involving the legality of any tax, assessment, or *957 toll... ." (e.s.) See also City of Ft. Myers v. Heitman, 149 Fla. 203, 5 So.2d 410 (1941). This distinction continued until the 1972 amendment to the Constitution of 1968. The schedule to Article V now provides that until changed by general law, consistent with the provisions of sections 1 through 19 of the Article, circuit courts shall have exclusive original jurisdiction "in all cases involving legality of any tax assessment or toll... ." Art. V, § 20(c)(3). The deletion of the comma between "tax" and "assessment" is not a mere insignificant one, because, as previously observed, assessment, unlike tax, involves all of the proceedings for raising money by the exercise of the power of taxation from the inception of the proceedings to their conclusion.
Under the Florida Sales Tax Act, an assessment issues only after the filing of a tax return or upon the failure of a taxpayer to file the return. Once a return is filed, DOR is authorized to audit or inspect the records of the dealers, and, in the event of a deficiency, to issue an assessment. See Section 212.12(6)(a), Florida Statutes (1979). And after an assessment is imposed, the department may proceed to collect the taxes, together with any interest and penalty on the basis of the assessment. § 212.12(4), Fla. Stat. (1979). Moreover, it is only after the notification of an assessment to the taxpayer that the statutory procedure of Section 212.14, Florida Statutes (1979), calling for the service of a distress warrant and seizure of the taxpayer's property, is brought into play. Obviously, payment in full terminates not only the taxpayer's continuing liability for any penalties or interest that may be assessed, but the assessment as well.
An assessment does not automatically issue upon the DOR's determination that a delinquency in the payment of taxes has or may have occurred. The department has three years after the first day of the month following the date on which it determines the tax became due and payable to issue an assessment, but that time limitation can be extended by a request for an inspection and examination of the dealer's books and records. See Section 212.14(6). Under current procedure, if a taxpayer files a timely protest with the DOR, the protest will prevent an assessment from becoming final, thereby preserving the taxpayer's right to seek further review and tolling the statutory sixty-day limitation for the taxpayer to initiate an action contesting the legality of the tax assessed. See Fla. Admin. Code Rules 12-6.003, 12-6.0031 and 12-6.004.
In the present case, I can find nothing in the record disclosing that an assessment for delinquent taxes issued. Appellants' amended complaint alleges that on October 25, 1977, the Director of the Sales and Use Tax of the DOR advised them and their lessor, Dade County, that all monies payable to the lessor pursuant to the terms of their leases would be subject to the tax imposed under Section 212.031, Florida Statutes (1979), and that the lessor would be required to bill their lessees for such taxes. The lessor thereupon notified all of the appellants that it would bill each of them pursuant to the department's letter. Upon notification of their alleged liability for taxes, all of the appellants were billed and paid the full amount of the taxes claimed to be owed to the lessor, and the lessor in turn remitted the said disputed taxes to the department. Appellants further alleged that the taxpayers have continued to pay the disputed amounts, and that there are no current delinquencies. By paying the tax, the taxpayers avoided the imposition of any penalty or interest which would have followed if an assessment had been exacted.
Whether DOR's letter of October 25, 1977 may be appropriately considered an assessment is impossible to determine from this record. DOR argues that no assessment issued, and in the absence of any evidence to the contrary, I agree with its argument. The fact that DOR has the right to issue an assessment upon the filing of "a grossly incorrect report," from its own estimate for the taxable period, Florida Administrative Code Rule 12A-1.056(6), does not mean that an assessment was imposed. There is moreover nothing in the record disclosing the existence of an estimate *958 from which an assessment could have been based.
Even if the letter from DOR could be considered an assessment, I am of the view that the drafters of the 1972 amendment to Article V of the Florida Constitution never contemplated, in using the language "legality of any tax assessment," that the authority of an agency to handle contests of tax assessments, which were no longer outstanding, because they had been extinguished by payment, required any additional general legislation other than that authorized by Section 215.26, Florida Statutes, conferring on the Comptroller the jurisdiction to entertain tax refund applications. For many years preceding the adoption of the 1972 constitutional amendment to the jurisdictional powers of circuit courts, section 215.26, first enacted by Chapter 22008, § 1, Laws of Florida (1943), had empowered the Comptroller to make a determination of whether to grant a taxpayer's application for a refund in instances "where no tax ... is due." By allowing the Comptroller the right to decide whether to permit a refund if no tax is due, the legislature, in my judgment, authorized the Comptroller to decide as well the issue inextricably linked to that decision  the question involving the legality of the tax.
When the drafters of the 1972 amendment to Article V, Section 20(c)(3) of the Florida Constitution authorized exclusive original jurisdiction to circuit courts in cases involving the legality of any tax assessment, until such jurisdiction was changed by general law consistent with other provisions of Article V, they must have reasonably taken into consideration the customary practice which the Comptroller had assumed for nearly thirty years in the handling of applications for refunds pursuant to Section 215.26, Florida Statutes. I hardly think it could have been the drafters' intention  given this common practice, a practice which the Florida Tax Section represents has been handled administratively in hundreds of cases  to apply the exclusive jurisdiction language of Article V, Section 20(3), to applications for refunds, wherein the Comptroller is authorized to grant or deny the application, based upon his interpretation of the particular taxing statute. It is a well-recognized maxim of both constitutional and statutory construction that where a contemporaneous and practical interpretation has stood unchallenged for a considerable length of time, the interpretation will be regarded as very important in arriving at a proper construction. 2A Sutherland Statutory Construction § 49.07 (4th ed. 1984). Cf. Heverly v. Commissioner of Internal Revenue, 621 F.2d 1227 (3d Cir.1980) (taxpayers shoulder a heavy burden when seeking to overturn a construction of a tax statute that has prevailed in both judicial opinions and tax planning for almost 50 years).
The most logical conclusion that can be drawn as to the drafters' intent in the instant case is that at the time of the revision, the legislature had already, pursuant to general law, consistent with sections 1 through 19 of Article V, conferred authority on the Comptroller to grant or deny requests for tax refunds, and that such authority did not involve a contest over the legality of a tax assessment, for the simple reason that the taxpayer was not contesting the legality of the assessment, which was no longer outstanding, because the tax on which any assessment could have issued had been paid.
I am aware that an agency's jurisdiction to consider the legality of the tax must come from a statutory source outside of the APA, see generally, Department of Revenue v. University Square, Inc., 336 So.2d 371 (Fla. 1st DCA 1976), nevertheless I consider that the tax refund statute itself, by necessary implication, confers such authority. We have recognized that an express grant of power to an agency will be deemed to include such powers as are necessarily or reasonably incident to the powers expressly granted. Hall v. Career Service Commission, 478 So.2d 1111, 1112 (Fla. 1st DCA 1985). Since the Comptroller has discretionary authority under Section 215.26, Florida Statutes, to grant a refund to a taxpayer where no tax is due, conversely he has the concomitant authority to deny a refund where the tax is due. Accordingly it appears to me that the Comptroller *959 has subject matter jurisdiction  and possessed such jurisdictional authority even before the 1981 amendment  to determine the legality of the tax.
Before the passage of the APA, the Comptroller's decision of whether to authorize a refund was not final agency action, immediately reviewable. If the taxpayer's application for a refund involved only a question of law, upon the Comptroller's denial of the refund, the taxpayer was permitted to proceed in court by mandamus, certiorari, or "the most complete and expeditious remedy possible to recover." State ex rel. Palmer-Florida Corp. v. Green, 88 So.2d 493, 495 (Fla. 1956). With, however, the adoption of the APA, the Comptroller's decision to deny a refund of taxes paid became, in my judgment, final agency action, which, for the reasons stated infra, was appropriately reviewable only by appeal, and not by one of the former, judicially recognized remedies, such as suits for declaratory judgments or for injunctive relief against the enforcement and collection of illegal taxes, applications for writs of mandamus or quo warranto. See 50 Fla. Jur.2d Taxation §§ 11:32-11:35, 15:1-15:17, 13:22-26 (1983).
My assumption that all contests relating to the assessment of taxes are triable only in an administrative forum, once the taxes have been paid and a refund is sought, is supported by the historical difference in the treatment of cases involving contests of assessments where taxes are not paid and those cases where the taxes are paid and refunds are then sought. The cases holding that only the circuit courts possess original jurisdiction to consider the legality of the assessments invariably fall into the former category. See, e.g., Department of Revenue v. Amrep Corp.; Department of Revenue v. University Square, Inc.; Department of Revenue v. Joanos, 364 So.2d 24 (Fla. 1st DCA 1978), cert. denied, 372 So.2d 467 (Fla. 1979); Department of Revenue v. Crisp, 337 So.2d 404 (Fla. 2d DCA 1976); Florida Department of Revenue v. Estero Bay Development Corp., 336 So.2d 479 (Fla. 2d DCA 1976), cert. denied, 345 So.2d 422 (Fla. 1977). And none involved any dispute relating to a tax refund.
The only case cited in the majority's opinion concerning an application for a tax refund is Estate of W.T. Grant Co. v. Lewis, 358 So.2d 76 (Fla. 1st DCA 1978), affirmed, 370 So.2d 764 (Fla. 1979), appeal dismissed, 444 U.S. 976, 100 S.Ct. 476, 62 L.Ed.2d 403 (1979), wherein this court held that it properly had jurisdiction over a direct appeal of an administrative order denying a sales tax refund, despite the fact that the basis for the taxpayer's request for a refund was the asserted illegality of the tax. In determining that we possessed jurisdiction to consider the administrative appeal, we also implicitly decided that the Comptroller had subject matter jurisdiction to consider a claim for a tax refund as to taxes paid, but which the taxpayer claimed  because, due to events occurring after payment  were illegally assessed.
Despite this court's characterization in W.T. Grant of the taxes being "lawfully assessed", I think it obvious that no assessment ever issued, unless the term embraces the broad definition supplied by the majority at page 942, ante, including the setting or determining of the amount of the tax. If, then, an assessment occurred, presumably by the department's determination that the tax was properly owed, or by the taxpayer's own self-assessment by paying the tax, the taxpayer in W.T. Grant was doing precisely the same as are the taxpayers in the present case  contesting the legality of the tax assessed following the payment of the tax. If the majority's view is correct, the result reached in W.T. Grant must be considered incorrect. W.T. Grant, however, is representative of the traditional view, implicitly accepted until now, that payment of the tax, and a request for a refund of the same, takes the taxpayer's protest of the assessment out of a judicial arena and places it squarely in an administrative arena.
I consider that this conclusion has been commonly assumed by all until now. Indeed, it must have been assumed by the legislature, when, in enacting Section 72.011(5), Florida Statutes (1981), providing alternative judicial or administrative remedies *960 for contesting the "assessment of any tax," it explicitly excluded from the provisions of the statute actions for refunds of taxes. The conclusion to be drawn from the above statutory and judicial authorities is that the legislature has evinced an intent that protests of assessed taxes which have not been paid, and taxes paid for which refunds are sought, shall travel on separate tracks: the former since 1981 in a judicial or administrative forum at the taxpayer's option, and the other in an administrative forum.[1]
The majority refers also to Section 120.73, Florida Statutes, as a manifestation of the legislative intent that circuit courts retain jurisdiction to determine the issue at hand via suits for declaratory judgments. If, as I believe, for the reasons previously expressed, that the appropriate administrative agency and the circuit courts possess concurrent jurisdiction to consider the legality of the tax, once the tax has been paid and the assessment is, if it ever issued, no longer outstanding, then, pursuant to the doctrine of primary jurisdiction, the circuit court below, upon motion to dismiss the taxpayers' complaint, had no recourse other than to dismiss. The taxpayers did not have the option, now provided for contests pertaining to the legality of tax assessments, to proceed either in circuit court or before the appropriate agency. See Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153 (Fla. 1982); Criterion Insurance Co. v. State, Department of Insurance, 458 So.2d 22 (Fla. 1st DCA 1984).
Section 120.73 does not under the circumstances at bar permit the circuit court to proceed to judgment in the face of an available, alternative administrative remedy. Three categories of issues are generally recognized as authorizing suits in circuit courts under Section 120.73, as an alternative method to agency action: (1) matters that are considered extraordinary; (2) matters involving the legality of a tax assessment or toll; and (3) matters involving constitutional issues.[2] A.J. England, Jr. and L. Harold Levenson, 2 Florida Administrative Practice Manual, § 15.05(a) (1979).
I have previously discussed why I regard the contest at hand to be one not addressed to the legality of a tax assessment or toll. Moreover, the third category listed above is not involved, since no constitutional issue has been raised. As to the first category, matters that are considered extraordinary, the instant case in my judgment is no more extraordinary than what was at issue before the court in State ex rel Department of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977), wherein certain building contractors sought declaratory injunctive relief in circuit court to restrain the department from completing recently-adopted bidding and contract procedures for state office buildings. When the circuit court denied the department's motion to dismiss, the department filed an original petition for writ of prohibition in the district court of appeal, asserting the circuit court's lack of jurisdiction over the contractors' action. In granting the petition, this court, among other things, discussed the effect of the 1975 enactment of section 120.73 as to the issue of whether the suit should be allowed to proceed in circuit court. The court stated that those provisions of 120.73, providing that nothing in Chapter 120 should be construed to repeal any provision of the Florida Statutes granting the right of a proceeding in the circuit court, in lieu of an administrative proceeding, required statutory authorization outside of the APA, and that proceedings such as suits for injunction are not declaratory *961 proceedings which are preserved under section 120.73.
Another case from this court applying the Willis rule was School Board of Leon County v. Mitchell, 346 So.2d 562 (Fla. 1st DCA 1977), cert. denied, 358 So.2d 132 (Fla. 1978), in which it was held that section 120.73 only preserves declaratory judgment suits where extraordinary circumstances dictate, and, because the precise issue before the lower court involved the question of whether the elimination of appellee's position with the school board was a rule, the issue could and should have been raised in a 120.57 proceeding.
In the present case there is nothing extraordinary regarding the simple issue of whether the tax which the department sought to collect and did collect was covered by the appropriate provisions of the taxing statute. Appellants argued at the hearing on their 120.57 petition that Section 212.031(1)(c), Florida Statutes (1979), imposing a tax in an amount equal to four percent of the total rent charged for the lease of real property, does not apply to that portion of their profit participation rental agreement with their lessor, which obligated them to pay, in addition to a minimum rental fee, a sum based upon the lessees' monthly gross revenues.
The contested tax is one which on its merits any Article V court would without any great difficulty deem covered under the provisions of the particular taxing statute, as evidenced by this court's per curiam affirmance of the administrative order denying the refund application in 1982. The action taken by the Comptroller can hardly be described as one "so egregious or devastating that the promised administrative remedy is too little or too late." Willis, 344 So.2d at 590. Nor does the instant case fall into any of the extraordinary grounds authorizing circuit court intervention, categorized in Communities Financial Corporation v. Florida Department of Environmental Regulation, 416 So.2d 813, 816 (Fla. 1st DCA 1982), as follows:
(1) [T]he complaint must demonstrate some compelling reason why the APA (Chapter 120, Florida Statutes) does not avail the complainants in their grievance against the agency; or (2) the complaint must allege a lack of general authority in the agency and, if it is shown, that the APA has no remedy for it; or (3) illegal conduct by the agency must be shown and, if that is the case, that the APA cannot remedy that illegality; or (4) agency ignorance of the law, the facts, or public good must be shown and, if any of that is the case, that the Act provides no remedy; or (5) a claim must be made that the agency ignores or refuses to recognize related or substantial interests and refuses to afford a hearing or otherwise refuses to recognize that the complainants' grievance is cognizable administratively.
Any attempted incursion into a judicial forum by bringing an action that does not clearly involve any of the above extraordinary categories should be rejected, and the applicant required to proceed with his administrative remedy. Anything less than scrupulous adherence to the disciplines of Chapter 120 does violence to one of the primary purposes behind the enactment of Florida's Administrative Procedure Act:
Among the most creative innovations of the 1974 Act  and one the bureaucracy most resents  was the decision to place the conduct of those hearings into the hands of cadre of legally trained, independent hearing officers under the Department of Administration. There is already evidence of how those officers, if able and courageous and backed-up by the courts, can hold an obstreperous agency to its constitutional duty. For the courts to refuse to support and strengthen the role of those officers violates both the spirit and intent of the 1974 Act and deprives the people of the State of Florida of a potentially important and inexpensive forum in which to air their grievances. To do this, while claiming that otherwise the judicial power would be undermined, completely misapprehends the role of the courts in this important endeavor. It is not for the courts to sap administrative government of its sense of responsibility by excusing the latter from its oath. It is the task of *962 the courts to subject agency judgments to a skeptical, vigorous and hopefully increasingly expert scrutiny and to do so without regard to the wealth or political power of those who are at odds with the government. This, and this alone, is in keeping with the great traditions of the American judiciary, and this, and this alone, will assure to the people of this state a more responsive bureaucracy.
Swan, Administrative Adjudication of Constitutional Questions: Confusion in Florida Law and a Dying Misconception in Federal Law, 33 U.Miami L.Rev. 527, 537 (1979).
I also have no problem with the failure of the Department of Revenue to be named as a party to the 120.57 hearing. The amendment to Section 215.26(2), Florida Statutes, by Chapter 78-352, Section 2, Laws of Florida, permitting the Comptroller to delegate the authority to accept an application for refund to DOR does not, as suggested by the majority, place such administrative power solely in the hands of DOR, nor does it divest the Comptroller from his authority to review and adjudicate the substantive legality of the tax, by substituting his own judgment in place of the legal reasons relied upon by DOR in authorizing or denying a refund. The Comptroller's authority to delegate is, by the express terms of Section 215.26(2), permissive.
In the instant case the taxpayers' refund application was first referred to DOR, which, after having reviewed the application, determined that the refund should not be paid. Although DOR was not made a party to the subsequent 120.57 proceeding, it was, neither under the provisions of Section 215.26, nor under Chapter 120, a necessary and indispensable party to that proceeding  one whose joinder is so essential that a tribunal cannot proceed to a final determination. 39 Fla.Jur.2d, Parties § 7 (1982). An application for refund of taxes, filed pursuant to section 215.26, is made to the Comptroller  not the Department of Revenue. In the present case, once a request was made for a 120.57 hearing, the Comptroller, as the responsible agency head, had the authority to refer the request to a hearing officer. See Section 120.57(1)(b)3, Florida Statutes (1979). The appropriate agency head, pursuant to section 120.57(1)(b)9, has the additional authority to adopt the recommended order as the agency's final order, reject it, or otherwise modify it. In my judgment DOR cannot be considered a necessary and indispensable party to a proceeding conducted under section 120.57. Parenthetically I might add that the Comptroller is one of the members of the cabinet, and the cabinet and governor operate as the head of DOR. Section 20.21, Florida Statutes.
Finally, as I stated in my original dissent, although the doctrine of res judicata is inapplicable to those taxpayers who voluntarily dismissed their 120.57 petitions before the entry of the final administrative order, they should nevertheless be barred from pursuing their judicial remedies as they have avoided a clear point of entry into the administrative process.
I would affirm.
NOTES
[1] Section 212.031(1)(c), Florida Statutes (1979), imposes a tax on the rental charged for leased property "equal to 4 percent of and on the total rent charged for such real property by the person charging or collecting the rental." The tax is imposed directly on "the tenant actually occupying, using or entitled to the use" of the leased property, and the tenant is required to "pay the tax to his immediate landlord." § 212.031(2)(a). The tax so imposed "shall be in addition to the total amount of the rental ... shall be charged by the lessor ... by a rental arrangement with the lessee ... and shall be due and payable at the time of the receipt of such rental payment by the lessor." § 212.031(3). The lessor is required to remit the tax, after collection from the lessee, to DOR at the time and in the manner specified. Id. The tax so assessed also "shall constitute a lien on the property of the lessee of any real estate." § 212.031(4). It is perfectly evident, therefore, that the tax here involved is imposed upon the lessee, not the lessor, and is due and payable when the lease rental payment is made, pursuant to DOR's demand.
[2] Miami International Airport Pharmacy, Sirgany International, and International Pharmacies filed similar lawsuits about that time which were consolidated with Florida Export's action (R. 35, 38-42). The record on appeal contains only Florida Export's complaint; however, based on the circuit court's consolidation and certification of the class, we assume that all complaints raised substantially similar issues.
[3] Section 215.26, Florida Statutes (1979), states, in pertinent part:

(1) The Comptroller of the state may refund to the person who paid same ... any moneys paid into the State Treasury which constitute:
(a) Any overpayment of any tax, license or account due;
(b) A payment where no tax, license or account is due; and
(c) Any payment made into the State Treasury in error;
* * * * * *
(2) Application for refunds as provided by this section shall be filed with the Comptroller, except as otherwise provided herein, within 3 years after the right to such refund shall have accrued else such right shall be barred. The Comptroller may delegate the authority to accept an application for refund to any state agency vested by law with the responsibility for the collection of any tax, license, or account due. Such application for refund shall be on a form approved by the Comptroller and shall be supplemented with such additional proof as the Comptroller deems necessary to establish such claim; provided, such claim is not otherwise barred under the laws of this state. Upon receipt of an application for refund, the state agency to which the funds were paid shall make a determination of the amount due. If an application for refund is denied, in whole or in part, such state agency shall so notify the applicant stating the reasons therefor. Upon approval of an application for refund, such state agency shall furnish the Comptroller with a properly executed voucher authorizing payment.
(Emphasis added.)
[4] Appellants have not questioned the court's requirement that they seek a refund from the Comptroller under section 215.26 before proceeding with the circuit court action. See section 92.39, Florida Statutes (1979); Florida Livestock Board v. Hygrade Food Products Corp., 145 So.2d 535 (Fla. 1st DCA 1962), cert. discharged, 156 So.2d 493 (Fla. 1963); State v. Gay, 74 So.2d 560 (Fla. 1954).
[5] Appellants allege in their amended complaint that they applied to the Comptroller for a refund, but the record is unclear whether the refund application was actually sent to the office of the Comptroller or DOR. Section 215.26(2), Florida Statutes, authorizes the Comptroller to delegate to another agency authority to accept and process applications for the refund of taxes it administers. We have not found any statute, rule, or agreement in the record that has so delegated such authority to DOR; however, it has been noted that DOR routinely accepts such applications on behalf of the Comptroller. 1 Florida State & Local Taxes, paragraph 10.09 (The Florida Bar 1984).
[6] This uncertainty is quite understandable, given the prevailing confusion over required tax procedures engendered by agency efforts to treat the 1974 amendments to the Administrative Procedures Act as impliedly creating administrative jurisdiction to adjudicate the legality of tax assessments in quasi-judicial proceedings that superseded the circuit court's exclusive original jurisdiction of such disputes pursuant to explicit constitutional and statutory provisions. (See discussion under part IV-B, infra, at pp. 24-34.)
[7] The transcript reflects the following discussion by Mr. George, counsel for Florida Export (R. 255-57):

May I make a brief statement for the record with regard to the background of this so as to protect the record in the pending Circuit Court suit?
HEARING OFFICER AYERS: Yes.
MR. GEORGE: We filed the suit in the Circuit Court in Leon County on behalf of Florida Export Tobacco, Miami International Airport Pharmacy, Sirgany International and International Pharmacies. The Florida Export case is a class action on behalf of itself and others similarly situated.
The defendants in that case  and I refer to all of them as the State of Florida or the State  filed a motion for a dismissal and allege that there was a failure on the part of the plaintiffs in those cases, which have now all been consolidated, to exhaust their administrative remedies.
At the suggestion of the court, we filed a letter request to the State asking that they stipulate that such defenses or claims of the failure to exhaust administrative remedies be waived. And the State would not waive the exhaustion of administrative remedies.
So out of an abundance of caution, we requested an informal conference with the tax referee of the Department of Revenue and a petition for administrative hearing.
Within the last few days  that is, November the 20th, 1980  we received a letter from the Department of Revenue signed by Mr. Alford, A-l-f-o-r-d, granting us an informal conference. But we have not responded to that because we knew we had this hearing coming today. And no informal conference has been as yet scheduled.
By proceeding even on behalf of Florida Export, I don't want to be in a position of having waived any rights which we have to continue the prosecution of our Circuit Court suit, since we feel that the Circuit Court in Leon County does continue to have jurisdiction.
I find myself in a quandary because we're proceeding in two separate ways: that is, by administrative hearing and by a previously filed suit in the Leon County Circuit Court.
And the reason we're here is simply, as I set out, an abundance of caution so we do not have our suit dismissed, by virtue of any contention by the State or any position by the Court that we have failed to exhaust administrative remedies which we're seeking to do through these administrative proceedings.
[8] The record reflects that the following colloquy occurred (R. 252-53):

HEARING OFFICER AYERS: Let the record reflect that prior to the opening of this hearing the two attorneys and the hearing officer have discussed the posture of the case and have determined that there is insufficient material presently available in this hearing room in order to complete the case.
However, the parties have determined that it would be appropriate for this case to proceed with respect to only one of the petitioners, and for the other petitioners they would file a voluntary dismissal of their petitions for a hearing at this particular time, and that the parties would either stipulate to the facts filing a deposition to be taken by the individual representing the lessor in these proceedings, and that would be submitted to the hearing officer as a late filed exhibit.
In the event the respondent desires to submit rebuttal testimony, within five days of the taking of that deposition he would notify the hearing officer and the other party, and a deposition for a rebuttal witness would be scheduled. These depositions would be submitted to the hearing officer and constitute the record in this case, plus any stipulations that the parties may have entered into with respect to the facts that are involved.
Does that represent generally what was agreed upon, and does anyone have anything they would like to add to that comment?
MR. GEORGE: Yes. I would like the record to show that we are voluntarily dismissing as to the other petitioners and proceeding with the Florida Export Tobacco Company case alone in anticipation that any result obtained would be acknowledged by the Department of Revenue and the Comptroller's Office on a stare decisis basis, so that they would benefit from whatever success Florida Export might have in connection with the continued prosecution of their petitions. Counsel's statements, when read in context with appellants' positions in both the administrative proceeding and the pending circuit court action, indicate nothing more than a statement by counsel of the willingness to be bound by any "success Florida Export might have," that is, any ruling favorable to Florida Export. In view of the lengthy explanation thereafter stated on the record by counsel (see note 7, supra), we find no basis for concluding, for purposes of summary judgment, that all the appellants intended by this statement to elect to pursue administrative remedies exclusively and thereby waive their right to have the legality of the tax determined in the pending circuit court action. See St. Joe Paper Co. v. Metropolitan Dade County, 418 So.2d 1013 (Fla. 3d DCA 1982), pet. for rev. denied, 430 So.2d 451 (Fla. 1983).
[9] The order stated, in pertinent part:

1. That said Motion be and the same is hereby granted, with the Court determining that it does have jurisdiction over the subject matters and parties of these consolidated causes pursuant to the Constitution and laws of the State of Florida, and that under the facts and circumstances of these cases, there is no need on the part of the Plaintiffs to utilize administrative hearing procedures or exhaustive prosecution of these causes except as hereinafter provided.
2. The Court has also determined that the Plaintiffs have properly pleaded a class action by the rules and law preceding the adoption of Rule 1.220  Class Actions, which became effective January 1st, 1981. The requisites of said Rule have been substantially complied with, even though not in effect at the time that these consolidated causes were filed, with notice being given to the prospective members of the class by counsel representing the Plaintiffs. The Court may, at some later date, require further compliance with the requirements of the new Rule as may be indicated.
3. It has been brought to the attention of the Court that the claim of FLORIDA EXPORT TOBACCO CO., INC., is the subject of a pending administrative proceeding (case # 80-1785) which was initiated by said Plaintiff because there was some doubt concerning the need and necessity of its exhausting its administrative remedies as a condition to the maintenance of this suit, and the defendants herein refused, on request, to waive any such requirement. Under the circumstances, the further prosecution of these consolidated causes is hereby stayed pending a final resolution or determination of said Administrative Hearing, or until further Order of this Court.
[10] The tax due must be separately stated by the lessor, is a debt from the lessee to the lessor, and cannot be absorbed by the lessor. Rule 12A-1.086, Fla.Adm.Code.
[11] See, e.g., sections 192.31, 195.07, 196.14, 198.05, 199.03, 201.11, 208.49, 212.15, Florida Statutes (1961).
[12] The changes to section 215.26 were as follows (additions are underscored, deletions lined through);

(2) Application for refunds as provided by this section shall be filed with the Comptroller, except as otherwise provided herein, within 3 years after the right to such refund shall have accrued else such right shall be barred. The Comptroller may delegate the authority to accept an application for refund to any state agency vested by law with the responsibility for the collection of any tax, license, or account due. and Such application for refund shall be on a form approved to be prescribed by the Comptroller and shall be sworn to and and supplemented with such additional proof as the Comptroller deems is necessary to establish such claim; provided, such claim is not otherwise barred under the laws of this state. Upon receipt of an application for refund, the state agency to which the funds were paid shall make a determination of the amount due. If an application for refund is denied, in whole or in part, such state agency shall so notify the applicant stating the reasons therefor. Upon approval of an application for refund, such state agency shall furnish the Comptroller with a properly executed voucher authorizing payment.
Ch. 78-352, § 2, Laws of Florida.
[13] Section 20.21(1), Florida Statutes (1979), provides that "[t]he head of the Department of Revenue is the Governor and Cabinet."
[14] Of the appellate decisions we have reviewed involving disputed assessments and applications for tax refunds since the creation of DOR, whether arising out of a circuit court action or an administrative proceeding, all have included DOR as a party.
[15] A decision by one agency of the state is not necessarily binding on another agency. See Walley v. Florida Game & Fresh Water Fish Commission, 501 So.2d 671 (Fla. 1st DCA 1987).
[16] Section 212.15, Florida Statutes (1973), provided, in part:

(3) All taxes collected under this chapter shall be remitted to the department. The department is empowered, and it shall be its duty, when any tax becomes delinquent or is otherwise in jeopardy under this chapter, to issue a warrant for the full amount of the tax due or estimated to be due, with the interest, penalties and cost of collection, directed to all and singular the sheriffs of the state, and mail the warrant to the clerk of the circuit court of the county where any property of the taxpayer is located. Upon receipt of the warrant, the clerk of the circuit court shall record it, and thereupon the amount of the warrant shall become a lien on any real or personal property of the taxpayer in the same manner as a recorded judgment. The department may issue a tax execution to enforce the collection of taxes imposed by this chapter and deliver it to any sheriff. The sheriff shall thereupon proceed in the same manner as prescribed by law for executions and shall be entitled to the same fees for his services in executing the warrant to be collected. The department may also have a writ of garnishment to subject any indebtedness due to the delinquent dealer by a third person in any goods, money, chattels, or effects of the delinquent dealer in the hands, possession, or control of the third person in the manner provided by law for the payment of the tax due. Upon payment of the execution, warrant, judgment or garnishment, the department shall satisfy the lien of record within thirty days.
(4) If any taxpayer or person required by this chapter to remit taxes to the department shall feel aggrieved by any action of this department, he shall have the right within thirty days to appeal to the department for rehearing and reexamination and in support thereof may submit such data as may be relevant. All exceptions and objections to the actions of the department must be filed with the department in duplicate at least ten days prior to the date set for such rehearing and reexamination. If the department's decision is determined adversely to the taxpayer or person required by this chapter to remit to the department, such person shall have the right within thirty days from notice of such determination to have the department's determination reviewed in appropriate proceedings in the circuit court of Leon County, and in such review there shall be no presumption in favor of the department's findings.
(5) In any action involving the legality of any tax assessed under this chapter, the court shall inquire into and determine the legality and validity of the same and shall render decrees setting aside such tax assessment or any part of the same which is contrary to law, provided that the complainant shall in every case, except where the taxes assessed, including interest and penalties, have been paid to the department prior to the institution of suit, tender into court and file with the complaint the full amount of the assessment complained of, including any interest and penalties included in such assessment, or file with the complaint a cash bond, surety bond endorsed by a surety company authorized to do business in this state, or by such sureties as may be approved by the court, conditioned to satisfy any judgment or decree in full, including the taxes complained of, costs, interest and penalties.
(Emphasis added.)
[17] The circuit courts have routinely entertained actions for refund based on the illegality of the tax as originally assessed. See, e.g., Miller v. Agrico Chemical Co., 383 So.2d 1137 (Fla. 1st DCA 1980).
[18] Prior to its adjudication as a bankrupt, W.T. Grant had filed sales tax returns and paid the tax due on certain credit sales which it claimed thereafter became worthless and uncollectible. Grant sought a refund based on overpayment of sales taxes on the worthless transactions. In the administrative proceeding to which the Comptroller and DOR were made parties, the claim for refund was denied on grounds that it was not authorized by the statutes. This court affirmed, and expressly distinguished Department of Revenue v. Amrep Corp., 358 So.2d 1343. Similarly, appellate review of DOR's administrative denial of a claim for refund based on changed circumstances occurring after the initial payment of the tax due was had in Stewart Arms Apartments, Ltd. v. Department of Revenue, 362 So.2d 1003 (Fla. 4th DCA 1978).
[19] See note 15, supra. This provision amounts to no more than a venue provision implementing section 26.012.
[20] Section 72.011, Florida Statutes (1981), reads in full:

Jurisdiction of circuit courts in specific tax matters; administrative hearings and appeals; time for commencing action; parties; deposits. 
(1) A taxpayer may contest the legality of any assessment of tax, interest, or penalty provided for under chapter 198, chapter 199, chapter 201, chapter 203, chapter 206, chapter 208, chapter 211, chapter 212, chapter 213, chapter 214, chapter 220, chapter 376, or chapter 624 by filing an action in circuit court; or, alternatively, the taxpayer may file a petition under the applicable provisions of chapter 120. However, once an action has been initiated under s. 120.56, s. 120.565, or s. 120.57, no action relating to the same subject matter may be filed by the taxpayer in circuit court, and judicial review shall be exclusively limited to appellate review pursuant to s. 120.68; and once an action has been initiated in circuit court, no action may be brought under chapter 120.
(2) No action may be brought to contest an assessment of any tax, interest, or penalty assessed under a chapter specified in subsection (1) after 60 days from the date the assessment becomes final. The department shall establish by rule when an assessment becomes final for purposes of this section and a procedure by which a taxpayer shall be notified of the assessment.
(3) In any action filed in circuit court contesting the legality of any tax, interest, or penalty assessed under a chapter specified in subsection (1), the plaintiff must:
(a) Tender into the registry of the court with the complaint the full amount of the contested assessment complained of, including penalties and accrued interest, unless this requirement is waived, in writing, by the department; or
(b) File with the complaint a cash bond or a surety bond endorsed by a surety company authorized to do business in this state, or by any other security arrangement as may be approved by the court, and conditioned upon payment in full of the judgment, including the taxes, costs, penalties, and interest.
(4)(a) Except as provided in paragraph (b), an action initiated in circuit court pursuant to subsection (1) shall be filed in the Second Judicial Circuit Court in and for Leon County, or in the circuit court in the county where the taxpayer resides or maintains its principal commercial domicile in this state.
(b) Venue in an action initiated in circuit court pursuant to subsection (1) by a taxpayer that is not a resident of this state or that does not maintain a commercial domicile in this state shall be in Leon County. Venue in an action contesting the legality of an assessment arising under chapter 198 shall be in the circuit court having jurisdiction over the administration of the estate.
(5) This section is not applicable to actions for refund of taxes previously paid.
[21] While we are not required to decide the legal effect of the 1984 and 1985 amendments to section 72.011 made in sections 1 and 9 of chapter 84-170 and section 34 of chapter 85-342, Laws of Florida, we do not perceive those amendments to adversely affect our conclusion regarding the legislative intent expressed by section 72.011 as originally enacted; rather, such amendments corroborate our conclusion that actions for refund based on the legality of the tax assessment must be filed in circuit court only.
[22] As stated in the Tax Section's motion (p. 3):

The concept behind the dual jurisdiction is to parallel as closely as possible the federal system in tax matters. Under the federal system, a taxpayer either has the choice of contesting a deficiency through an action in the Tax Court or paying the deficiency and filing a claim for refund and contesting the denial of such claim in the District Court.
[23] Compare the discussion of this subject at 1 Fla. State & Local Taxes, paragraph 10.04[5][6] (Fla.Bar 1984).
[24] Section 92.39, Florida Statutes (1979), remains on the statute books and still requires evidence of the denial of a refund by the Comptroller as a condition of maintaining a court action. See note 4, supra.
[25] Appellants' persistent attempts to maintain this court action negate any basis for concluding that they voluntarily or intentionally waived their right to proceed in circuit court by pursuing the described administrative review under chapter 120. See notes 7 and 8, supra.
[1] This position is not entirely consistent with that of the Tax Section of the Florida Bar, see I Florida State and Local Taxes § 10.10[1] (The Florida Bar, 1984), stating that the taxpayer has the option of challenging a denial of an application of a refund either through chapter 120 or by judicial proceeding. I consider that the taxpayer must, for the reasons stated infra, exhaust his administrative remedies.
[2] Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund narrowed the scope of a circuit court's review, without, however, requiring exhaustion of administrative remedies in the event of a challenge to the facial constitutionality of a statute.