555 So.2d 1242 (1989)
Marilyn LIEBMAN, Petitioner,
v.
STATE of Florida and Honorable J. Stephen Menton, As Hearing Officer, Division of Administrative Hearings, Respondents.
Nos. 89-2181 and 89-2182.
District Court of Appeal of Florida, Fourth District.
November 15, 1989.
Alan H. Schreiber, Public Defender, and Fred Goldstein, Asst. Public Defender, Fort Lauderdale, for petitioners-Marilyn Liebman and Walter Jones.
Colleen A. Donahue of Dept. of Health and Rehabilitative Services, Fort Lauderdale, *1243 for respondents-State of Fla. and Honorable J. Stephen Menton.
PER CURIAM.

ON MOTION FOR CLARIFICATION
Upon consideration of respondent State of Florida's motion for clarification, we grant the motion, withdraw our prior opinion in this case, and substitute the following opinion.
Petitioners, Marilyn Liebman (Liebman) and Walter Jones (Jones), individually seek a writ of common law certiorari and a writ of prohibition. We consolidate their cases for opinion purposes to address the common issue.
At separate times, pursuant to section 394.467(1), Florida Statutes (1987), the circuit court placed each petitioner in custody for treatment. Prior to the expiration of the respective statutory six month periods of involuntary placement, each petitioner was admitted to South Florida State Hospital. After expiration of their particular initial six month period, Liebman and Jones each petitioned for a writ of habeas corpus alleging the failure to conduct the statutory hearing for continued hospitalization placement. In response to each petition, the assigned general master conducted the requested hearing and recommended release. When the hospital administrator filed exceptions to each master's report, the circuit court considered the exceptions and denied the writs. Liebman's and Jones' petitions before this court seek review of such denials and challenge the constitutionality of permitting a hearing officer to conduct continued hospitalization placement hearings.
We deny all petitions. We write to distinguish Bentley v. State ex rel. Rogers et. al., 398 So.2d 992 (Fla. 4th DCA 1981). In Bentley, this court condemned the statutory procedure whereby a hearing officer made the initial determination of a person's competency to consent to treatment. After Bentley, the legislature reworded section 394.459, Florida Statutes (1987), by substituting "the court" for "the hearing officer." We agree with the Bentley court that "a determination that a person is incompetent ... is clearly within the constitutionally described jurisdiction of the circuit court and is of a judicial nature." However, the Bentley court never addressed the issue of whether a hearing officer can determine continued involuntary hospitalization after a circuit court has made the initial determination. We do address the issue and find no constitutional infirmity for a hearing officer to conduct a hearing for continued involuntary hospitalization placement so long as a circuit court makes the initial determination.
Article V of the 1968 Florida Constitution did not mention "involuntary hospitalization" as being within the jurisdiction of any particular court, although the county courts had jurisdiction of guardianship proceedings.
Section 394.467, Florida Statutes (1971), when originally enacted, provided for the county courts to assume jurisdiction for the original determination of involuntary hospitalization, but even then the legislature provided for a hearing officer to hear petitions by hospital administrators for continuation of the involuntary hospitalization. The original statute also required the Department of Health and Rehabilitative Services (HRS) to establish rules and regulations regarding such hearings.
The 1972 Florida Constitution, substantially changing article V, provides:
SECTION 1. Courts.  The judicial power shall be vested in a supreme court, district courts of appeal, circuit courts and county courts. No other courts may be established by the state, any political subdivision or any municipality. The legislature shall, by general law, divide the state into appellate court districts and judicial circuits following county lines. Commissions established by law, or administrative officers or bodies may be granted quasi-judicial power in matters connected with the functions of their offices.

SECTION 5. Circuit Courts. 
(a) ORGANIZATION.  There shall be a circuit court serving each judicial circuit.

*1244 (b) JURISDICTION.  The Circuit Courts shall have original jurisdiction not vested in the county courts, and jurisdiction of appeals when provided by general law. They shall have the power to issue writs necessary or proper to the complete exercise of their jurisdiction. Jurisdiction of the circuit court shall be uniform throughout the state. They shall have the power of direct review of administrative action prescribed by general law.
SECTION 6. County Courts. 
(a) ORGANIZATION.  There shall be a county court in each county. There shall be one or more judges for each county as prescribed by general law.

(b) JURISDICTION.  The county courts shall exercise the jurisdiction prescribed by general law. Such jurisdiction shall be uniform through the state.
SECTION 20. Schedule of Article V. 
(a) This article shall replace all of Article V of the Constitution of 1885, as amended, which shall then stand repealed.
(b) Except to the extent inconsistent with the provisions of this article, all provisions of law and rules of court, in force on the effective date of this article shall continue in effect until superseded in the manner authorized.
(c) After this article becomes effective, and until changed by general law consistent with sections 1 through 19 of this article:

(3) Circuit Courts shall have jurisdiction of appeals from county courts and municipal courts except those appeals which may be taken directly to the supreme court; and they shall have exclusive original jurisdiction in all actions at law not cognizable by the county courts; of proceedings relating to the settlement of the estate of decedents and minors, the granting of letters testamentary, guardianship, involuntary hospitalization, the determination of incompetency, and other jurisdiction usually pertaining to courts of probate; in all cases in equity including all cases relating to juveniles; of all felonies and of all misdemeanors arising out of the same circumstances as a felony which is also charged; in all cases involving legality of any tax assessment or toll; in the action of ejectment; and in all actions involving the titles or boundaries or right of possession of real property. The circuit court may issue injunctions. There shall be judicial circuits which shall be the judicial circuits in existence on the date of adoption of this article. The chief judge of a circuit may authorize a county court judge to order emergency hospitalization pursuant to Chapter 71-131, Laws of Florida, in the absence from the county of the circuit judge and the county court judge shall have the power to issue all temporary orders and temporary injunctions necessary or proper to the complete exercise of such jurisdiction.
Section 20 merely provided interim jurisdiction until the legislature acted to establish different jurisdictions "to provide the transition from the old to the new." Florida Export Tobacco v. Department of Revenue, 510 So.2d 936, 948 (Fla. 1st DCA), rev. denied, 519 So.2d 986 (Fla. 1987). Section 1 of the amended article did change judicial power in that the constitution now authorizes the legislature to give administrative agencies quasi-judicial power in respect to matters connected with the function of their offices. Such jurisdiction can be exercised concurrently with the original, nonexclusive jurisdiction given to circuit courts over the same matters. Florida Export Tobacco, 510 So.2d at 936; State ex rel. Jones v. Wiseheart, 245 So.2d 849 (Fla. 1971).
In Florida Export Tobacco, the First District addressed the issue of whether the 1972 amendment to the Florida Constitution gave the legislature the power to change by general law the circuit court's exclusive jurisdiction to determine the legality of tax assessments and whether the legislature had given the administrative agency, Department of Revenue (DOR), concurrent jurisdiction to make such a determination. Noting that section 5(b) of the 1972 amendment to the constitution vested the circuit court with only "original" jurisdiction (as opposed to "exclusive"), and considering the transitional nature of section *1245 20, the First District found that the amendments "authorized the legislature to give administrative officers and agencies quasi-judicial jurisdiction in matters connected with the functions of their offices, and that such jurisdiction could legally be exercised concurrently with original, nonexclusive jurisdiction given to circuit courts over the same matters," including disputes over the legality of the tax assessments. Florida Export Tobacco, 510 So.2d at 948 (emphasis added). The First District saw the "critical question" as whether or not the legislature had given concurrent jurisdiction at the point of the particular tax controversy.
In applying this analysis to the present case we find it is necessary to continue with the legislative history.
In 1972 the legislature passed section 26.012, Florida Statutes (Supp. 1972), which provided that the circuit court would have "exclusive original jurisdiction" of "proceedings relating to ... involuntary hospitalization [and] the determination of incompetency... ." At the same time, however, section 394.467, Florida Statutes (1971), still provided for a hearing officer to hear petitions to determine continued involuntary hospitalization. The definition of "court" was amended to mean a circuit court instead of a county court to be consistent with the statutory changes. Then in 1978, the legislature again amended section 394.467, Florida Statutes (Supp. 1978), to provide for the use of section 120, Administrative Procedures Act (APA) and specifically referred to the use of procedures under section 120.57, Florida Statutes (1977). Thus, the legislature reaffirmed its intention to have hearings on continuation of involuntary hospitalization handled under the APA. There is no question that here, unlike the Florida Export Tobacco case, there is an explicit legislative direction that the administrative agency exercise its quasi-judicial jurisdiction in cases regarding continuation of involuntary commitment. Accordingly, hearing officers assigned pursuant to section 394.457(7), Florida Statutes (1987), have concurrent jurisdiction with the circuit court to conduct hearings on petitions for continuation of involuntary hospitalization.
We would also point out that in two other cases, Coppol v. Muhtar, 444 So.2d 1114 (Fla. 2nd DCA 1984) and Williams v. Davis, 459 So.2d 406 (Fla. 1st DCA 1984) the courts considered the hearing procedure under section 394.467(4), Florida Statutes (1983). However, neither court addressed the constitutional question before us.
Accordingly, we deny the writs of prohibition. We also deny the writs of certiorari as both concern reviews of a circuit court final order rendered to dispose of a petition for writ of habeas corpus filed under the circuit court's original jurisdiction. Certiorari lies in this court only to review non-final orders of lower courts and final orders of a circuit court rendered in its appellate capacity. Fla.R.App.P. 9.130 and 9.030(b). In addition, both petitioners have an adequate remedy on plenary appeal of any final order of continued hospitalization placement.
STONE, WARNER and GARRETT, JJ., concur.